MICHIANA EASY LIVIN' COUNTRY, INC., d/b/a Michiana R.V., Petitioner,

v.

James G. HOLTEN, Respondent.

No. 04–0016.

Supreme Court of Texas.

Argued Jan. 6, 2005.

Decided May 27, 2005.

Rehearing Denied Sept. 2, 2005.

William G. Rossick, Watson & Rossick, Austin, Charles A. Watson, Kelly Michael Kowis, Watson, Kowis & Rossick, Houston, Larry D. Thompson, and Robert G. Smith Jr., Lorance & Thompson, P.C., Houston, for Petitioner.

Brock C. Akers and Neal Kieval, Phillips & Akers, P.C., Houston, for Respondent.

Craig Madison Patrick, Craddock Reneker & Davis, L.L.P., Dallas, and Evelyn L. Becker, O'Melveney & Myers LLP, Washington, DC, for Others.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice OWEN, and Justice GREEN joined.

James Holten decided to buy a $64,000 Coachmen recreational vehicle sight unseen. Eschewing every RV dealer in Texas, he sought a lower price from Michiana Easy Livin' Country, Inc., an outlet store that only did business in Indiana. Holten called Michiana in Indiana, sent payment to Indiana, paid for delivery from Indiana, and agreed to resolve every dispute in Indiana. But when a dispute actually arose, he filed suit in Texas.

The trial court and court of appeals denied Michiana's special appearance. Because of a conflict in the decisions of the courts of appeals,[1] we have jurisdiction to review this conclusion.[2] Finding Michiana does not have minimum contacts with Texas, we reverse.

## I

### A. Petition and Brief

We first address two questions of error preservation.

■ First, Holten argues that Michiana cannot assert a minimum-contacts challenge because it was raised for the first time in Michiana's brief on the merits rather than in its petition for review.[3] In its petition for review, Michiana stated the issue presented as follows:

> Whether factually and legally sufficient evidence exists in the Clerk's Record to support the implied finding by the trial court that Michiana committed a tort in Texas—the only basis for personal jurisdiction over Michiana by Texas courts.

Both the opinion below and the petition for review here list undisputed facts showing that Michiana had no contact with Texas or Texans except for the alleged tort. Michiana's petition is correct—the sole ground on which the court of appeals based jurisdiction was the commission of a tort in Texas.[4] The argument that this conclusion was incorrect necessarily included the subsidiary argument detailed in Michiana's brief—that without that ground, jurisdiction did not exist. This is all the rules require.[5]

### B. The Record in Pretrial Hearings

■ Second, the appellate record contains no reporter's record of the special appearance hearing. Though candidly conceding that no oral testimony or new exhibits were presented at that hearing, Holten nevertheless argues we must presume evidence was presented that supports the trial court's order.

It is difficult to state a bright-line rule regarding unrecorded pretrial proceedings, as they come in so many shapes and sizes. Many pretrial "hearings" take place entirely on paper, while others involve a per-

1. *See infra* notes 25–26.

2. Tex. Gov't Code § 22.001(a)(2), § 22.225(c).

3. *See* Tex.R.App. P. 55.2 ("The petitioner's brief on the merits must be confined to the issues or points stated in the petition for review....").

4. 127 S.W.3d 89, 96–99.

5. Tex.R.App. P. 55.2(f) (providing that issues presented "will be treated as covering every subsidiary question that is fairly included").

sonal appearance in court.[6] In some the parties must file all evidence with the clerk;[7] in others they must present it in open court;[8] in most the manner of presentation is discretionary;[9] in at least one the answer is unclear.[10]

What is clear is that a reporter's record is required only if evidence is introduced in open court; for nonevidentiary hearings, it is superfluous.[11] If all the evidence is filed with the clerk and only arguments by counsel are presented in open court, the appeal should be decided on the clerk's record alone.[12]

The difficulty of course is that the absence of a reporter's record does not tell us whether a pretrial hearing was nonevidentiary, or evidentiary but not preserved. Presuming them all the former unfairly penalizes a party that presents evidence in open court that the other party does not bother to preserve. But presuming them all the latter would require *every* hearing to be recorded—whether evidentiary (to show what was presented) or not (to show nothing was). Besides being wasteful, this would frustrate the intent of our appellate rule requiring a reporter's record only "if necessary to the appeal." [13]

For some years now the trend has been away from full evidentiary hearings in open court for most pretrial matters. While we have generally encouraged oral hearings when arguments may be helpful,[14] both the Legislature and this Court have discouraged oral presentation of testimony and evidence when they can be fairly submitted in writing.[15] Counsel can almost always direct the trial court's attention to pertinent deposition excerpts, discovery responses, or affidavits in less time

---

**6.** *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex.1998) (per curiam) ("Unless required by the express language or the context of the particular rule, the term 'hearing' does not necessarily contemplate either a personal appearance before the court or an oral presentation to the court.").

**7.** *See, e.g.*, Tex.R. Civ. P. 87(3)(b) (motion to transfer venue); *id.* 166a(c) (summary judgment).

**8.** *See, e.g.*, *Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 687 (Tex. 1968) (holding temporary injunction may not be proved by affidavit unless parties agree otherwise); *see also Union Carbide Corp. v. Moye*, 798 S.W.2d 792, 794 (Tex.1990) (Hecht, J., concurring) (arguing trial court is "obliged ... to hear live testimony when it is necessary to resolve issues that cannot be determined on a written record").

**9.** *See, e.g.*, Tex.R. Civ. P. 120a(3) (special appearance); 193.4(a) (privilege objections); 199.6 (deposition objections); *compare Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 702 (Tex.2003) (noting five-day certification hearing included twelve bound volumes of exhibits and six volumes of testimony) *with Snyder Communications, L.P. v. Magana*, 142 S.W.3d 295, 297 (Tex.2004) (per curiam) (noting thir-ty-minute certification hearing included only brief deposition testimony of one claimant).

**10.** *Union Carbide Corp.*, 798 S.W.2d at 793 (reserving question whether transfer of venue alleging local prejudice required or allowed oral testimony).

**11.** *Tilton v. Moye*, 869 S.W.2d 955, 957 (Tex. 1994); *Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex.1993).

**12.** *Parmelee*, 850 S.W.2d at 181.

**13.** Tex.R.App. P. 34.1.

**14.** *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex.1998) (per curiam) ("An oral hearing on a motion for summary judgment may be helpful to the parties and the court, just as oral argument is often helpful on appeal.").

**15.** *See, e.g.*, Act of June 17, 1983, 68th Leg., R.S., ch. 385, § 2, 1983 Tex. Gen. Laws 2119, 2124 (repealing Tex.Rev.Civ. Stat. art.2008, which provided for plea of privilege hearings); Tex.R. Civ. P. 120(a) (amended to allow proof by affidavit in special appearances, 785–786 S.W.2d (Tex.Cases) xlviii (1990)).

than it takes to recreate them in open court. Presuming that most pretrial proceedings are evidentiary would not only discourage this trend, but would encumber thousands of routine hearings by requiring formal proof that no proof was offered.

■ Accordingly, we have in the past presumed that pretrial hearings are nonevidentiary absent a specific indication or assertion to the contrary.[16] If the proceeding's nature, the trial court's order, the party's briefs, or other indications show that an evidentiary hearing took place in open court, then a complaining party must present a record of that hearing to establish harmful error.[17] But otherwise, appellate courts should presume that pretrial hearings are nonevidentiary, and that the trial court considered only the evidence filed with the clerk.

It is true that a dozen years ago in *Piotrowski v. Minns* we stated: "[a] litigant who fails to request that the reporter record pretrial proceedings risks waiver of any complaint with respect to error occurring during those proceedings."[18] But the

appellant there conceded that the special appearance hearing was evidentiary.[19] Moreover, since that time the rules have changed so that court reporters no longer attend court and make a record only "when requested" but now must do so "unless excused by agreement of the parties."[20] The former rule implied a lack of diligence when the losing party requested no record;[21] the current rule implies an agreement that no record was made because none was needed.

■ Either party, of course, may allege that a hearing was evidentiary, but that allegation must be specific. Merely asserting that the trial court "considered evidence at the hearing" is not enough—trial courts do that when a hearing is conducted entirely on paper, or based solely on affidavits and exhibits filed beforehand. Instead, there must be a specific indication that exhibits or testimony was presented in open court *beyond* that filed with the clerk. As the rules of professional conduct prohibit assertions that a hearing was evidentiary when it was not,[22] and

**16.** *See Tilton,* 869 S.W.2d at 957 ("The order at issue, however, indicates that the trial court's consideration of the motion to compel was based only on the argument of counsel. Additionally, at oral argument, counsel for Smith conceded that the trial court took no testimony at the hearings. Thus, no statement of facts is necessary."); *Otis Elevator Co.,* 850 S.W.2d at 181 ("The court of appeals held that defendants were precluded from raising their complaint on appeal because they had failed to bring forward a statement of facts from [other pretrial] hearings. This holding, too, is incorrect. There is no indication or assertion that any other hearing to which [plaintiff] alludes involved the taking of evidence.").

**17.** *See, e.g.,* Tex.R.App. P. 44.1, 61.1; *Walker v. Packer,* 827 S.W.2d 833, 837 (Tex.1992) ("Since an evidentiary hearing was held, the Walkers had the burden of providing us not only a petition and affidavit, but also a statement of facts from the hearing.") (citation

omitted); *see also RP&R, Inc. v. Territo,* 32 S.W.3d 396, 401 (Tex.App.—Houston [14th Dist.] 2000, no pet.) (reversing temporary injunction as record contained no testimony from claimant).

**18.** 873 S.W.2d 368, 370–71 (Tex.1993).

**19.** *Id.* at 370.

**20.** *Compare* Tex.R.App. P. 11(a), 49 Tex. B.J. 961 (1986, superseded 1997) *with* Tex.R.App. P. 13.1(a) (adopted in 1997); *see also* Tex. Gov't Code § 52.046(a) (requiring a court reporter to attend court and make a record "on request"); *id.* § 54.046(c) (granting Supreme Court authority to adopt rules governing court reporter's duties in civil proceedings).

**21.** *Piotrowski,* 873 S.W.2d at 370–71.

**22.** Tex. Disciplinary R. Prof'l Conduct 3.03 (requiring candor toward tribunal); Tex. Law-

as events in open court can usually be confirmed by many witnesses, there is no reason to expect that such assertions will be lightly fabricated.

■ Our appellate rules are designed to resolve appeals on the merits, and we must interpret and apply them whenever possible to achieve that aim.[23] Accordingly, we decline to presume the special appearance hearing here was evidentiary when everyone concedes it was not.

## II

### A. Background

As its name invertedly suggests, Michiana is located in Indiana a few miles from the Michigan border. It is a separate legal entity from the manufacturer or any other dealers of Coachmen RVs. It has neither employees nor property in Texas, and is not authorized to do business here. It does not advertise in Texas or on the Internet, and thus did not solicit business from Holten or anyone else in Texas.

The sale at issue here was initiated entirely by Holten. Seeking a cheaper price than he could get from any of Coachmen's many dealers in Texas, Holten called the Coachmen factory. He was informed that Coachmen did not sell directly from the factory, but that a lower price could be obtained from Michiana, a "factory outlet." Holten obtained Michiana's number from the factory and placed the call that initiated the transaction here.

The RV was constructed and equipped outside Texas. It was paid for outside Texas. It was shipped to Texas at Holten's request and entirely at his expense.

The question presented is whether suit can be brought in Texas based on a nonresident's alleged misrepresentations in a telephone call with a Texas resident. The courts of appeals are split on this question of specific jurisdiction[24]—some holding it would violate constitutional standards,[25] and others (including the lower court here) that it would not.[26]

### B. Purposeful Availment

■ For half a century, the touchstone of jurisdictional due process has been "purposeful availment." Since *Hanson v. Denckla*, "it is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[27]

---

YER'S CREED: A MANDATE FOR PROFESSIONALISM IV(6) ("I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage.").

23. *Bennett v. Cochran*, 96 S.W.3d 227, 230 (Tex.2002) (per curiam).

24. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 796 (Tex.2002) ("Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum.").

25. *City of Riverview, Michigan v. Am. Factors, Inc.*, 77 S.W.3d 855, 858 (Tex.App.—Dallas 2002, no pet.); *Hayes v. Wissel*, 882 S.W.2d 97, 98–100 (Tex.App.—Fort Worth 1994, no

pet.); *Laykin v. McFall*, 830 S.W.2d 266, 269 (Tex.App.—Amarillo 1992, no pet.); *C.W. Brown Mach. Shop, Inc. v. Stanley Mach. Corp.*, 670 S.W.2d 791, 793 (Tex.App.—Fort Worth 1984, no writ).

26. 127 S.W.3d at 95; *Boissiere v. Nova Capital, LLC*, 106 S.W.3d 897, 904 (Tex.App.—Dallas 2003, no pet.); *Ahadi v. Ahadi*, 61 S.W.3d 714, 720 (Tex.App.-Corpus Christi 2001, pet. denied); *Ring Power Sys. v. Int'l de Comercio Y Consultoria*, 39 S.W.3d 350, 353–54 (Tex.App.—Houston [14th Dist.] 2001, no pet.); *Mem. Hosp. Sys. v. Fisher Ins. Agency*, 835 S.W.2d 645, 650–51 (Tex.App.—Houston [14th Dist.] 1992, no writ).

27. 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (emphasis added).

■ Three aspects of this requirement are relevant here. First, it is only the defendant's contacts with the forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of ... the 'unilateral activity of another party or a third person.' "[28]

■ Second, the acts relied on must be "purposeful" rather than fortuitous.[29] Sellers who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to the jurisdiction of the latter in suits based on their activities.[30] By contrast, a defendant will not be haled into a jurisdiction solely based on contacts that are "random, isolated, or fortuitous."[31]

■ Third, a defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction.[32] Jurisdiction is premised on notions of implied consent—that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there.[33] By contrast, a nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction.[34]

## C. Stream of Commerce

■ In the context of product sales, a nonresident need not have offices or employees in a forum state in order to meet the purposeful availment test. In *International Shoe Co. v. Washington*, a nonresident corporation had neither offices nor inventory in the state of Washington, but did have a dozen resident salesmen on commission who exhibited samples, solicited orders, and transmitted them to other states for shipment to resident consumers.[35] The operation of a sales and distribution network rendered the nonresident subject to the state's jurisdiction.[36]

■ Thus, a nonresident that directs marketing efforts to Texas in the hope of soliciting sales is subject to suit here in disputes arising from that business. Advertising in telephone directories in Texas cities,[37] operating an office for sales information and support,[38] and certain activities over the Internet[39] all meet this standard.

---

**28.** *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

**29.** *Id.*

**30.** *Id.* at 473 (citing *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)).

**31.** *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

**32.** *See* Merriam Webster's Collegiate Dictionary 79 (10th ed. 1993) ("Avail: ... to be of use or advantage to: profit.").

**33.** *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559 (1980) ("The Due Process Clause ... gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 808 (Tex.2002).

**34.** *Burger King*, 471 U.S. at 473, 105 S.Ct. 2174.

**35.** 326 U.S. 310, 313–14, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**36.** *Id.* at 320, 66 S.Ct. 154.

**37.** *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 436 (Tex.1982).

**38.** *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex.1985) (per curiam).

**39.** *See, e.g., Reiff v. Roy*, 115 S.W.3d 700, 705–06 (Tex.App.-Dallas 2003, pet. denied) (surveying Texas law on Internet activities).

It is less clear whether a nonresident "purposefully avails" itself of a forum when it benefits from a major market without doing any of the marketing. Almost twenty years ago, four justices of the United States Supreme Court held that a nonresident's mere awareness that thousands of its products were ultimately being sold in the forum state established purposeful availment;[40] four others held that "additional conduct" was required (e.g., designing the product for or advertising it in the forum State);[41] the ninth held that, assuming "additional conduct" was required, regular sales resulting in thousands of products reaching the forum state over many years would suffice "[i]n most circumstances."[42]

Since that time, we have noted that our cases appear to follow the "additional conduct" standard.[43] Thus, for example, we have held that shipping hundreds of tons of raw asbestos to Houston was insufficient to establish jurisdiction absent evidence that a nonresident participated in the decision to send it there.[44]

 Whichever of these standards is ultimately correct, Michiana's conduct meets none of them. Michiana did not place large numbers of RVs in a "stream of commerce" flowing to Texas; as we have noted before, stream-of-commerce jurisdiction requires a stream, not a dribble.[45] Nor is there any evidence of any "additional conduct"—Michiana did not de-sign, advertise, or distribute RVs in Texas. Exercising jurisdiction here would go far beyond anything we have approved in other commercial cases.

## D. Single Sales

The court of appeals relied on several cases by intermediate courts in Texas holding that a single contact with the state is sufficient to establish jurisdiction.[46] But the United States Supreme Court has emphatically answered the question whether a single contract with a Texas resident can automatically establish jurisdiction—"the answer clearly is that it cannot."[47]

Both the United States Supreme Court and this Court have found no purposeful availment in cases involving isolated sales solicited by consumers who proposed to use the product in a state where the defendant did no business. In *World–Wide Volkswagen Corp. v. Woodson,* the Supreme Court held that dealers who sold a car in New York could not be sued in Oklahoma just because the buyers were involved in a collision there:

> [W]e find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privi-

**40.** *Asahi Metal Ind. Co., Ltd. v. Superior Court,* 480 U.S. 102, 121, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (Brennan, J., concurring in part).

**41.** *Id.* at 112, 107 S.Ct. 1026 (O'Connor, J., plurality opinion).

**42.** *Id.* at 122, 107 S.Ct. 1026 (Stevens, J., concurring in part).

**43.** *CMMC v. Salinas,* 929 S.W.2d 435, 440 (Tex.1996) ("If anything, *Keen* suggests that we would follow Justice O'Connor's formula-tion of the stream-of-commerce rule in Texas.").

**44.** *CSR Ltd. v. Link,* 925 S.W.2d 591, 595–96 (Tex.1996).

**45.** *CMMC,* 929 S.W.2d at 439.

**46.** 127 S.W.3d at 96.

**47.** *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 n. 18, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

leges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.[48]

The facts here are not the same as those in *Woodson*, but do not differ in any material respect. Michiana *knew* Holten would take his RV to Texas, while it was merely *foreseeable* to the defendant in *Woodson* that its buyer would drive his Audi to Oklahoma.[49] But in either case the choice was entirely that of the purchaser; the seller had no say in the matter. Under Holten's theory, Michiana could be sued in any state or country from which he chose to place his call and take delivery. But as the Supreme Court stated, "unilateral activity ... cannot satisfy the requirement of contact with the forum State."[50]

This Court addressed the same question in 1996 in *CMMC v. Salinas*.[51] In that case, a French manufacturer had made no effort to market its winepress equipment in Texas, had made only one other sale in Texas, and did not initiate the sale at issue

to a Texas buyer.[52] We held that the Due Process Clause prohibited specific jurisdiction of a tort suit in Texas based on injuries resulting from alleged defects.[53] As Michiana's contacts here are certainly no more and arguably somewhat less than those in *CMMC*, the result must be the same, as the Due Process Clause has not changed in the interim.

It is true that in some circumstances a single *contract* may meet the purposeful-availment standard, but not when it involves a single *contact* taking place outside the forum state. A long-term franchise agreement may establish minimum contacts because, though it stems from a single contract, it involves many contacts over a long period of time.[54] Similarly, a life-insurance policy may stem from a single contract, but necessarily involves a series of contacts until death does the parties part.[55]

Certainly a nonresident corporation ought to be subject to suit in any jurisdiction where it "enjoys the benefits and protection of the laws of that state."[56] Here, it is hard to imagine what possible benefits and protection Michiana enjoyed from Texas law. Holten paid for the RV in advance, and could not have planned on taking it to Indiana regularly for service. Everything Michiana wanted out of the contract it had in hand. Indeed, it is hard to imagine how Michiana would have conducted its activities any differently if Texas had no law at all.

---

48. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559 (1980).

49. *Id.* at 296–97, 100 S.Ct. 559.

50. *Id.* at 298, 100 S.Ct. 559.

51. 929 S.W.2d 435 (Tex.1996).

52. *Id.* at 436.

53. *Id.* at 439.

54. *Id.* at 480.

55. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

56. *Int'l Shoe*, 326 U.S. at 319, 66 S.Ct. 154.

Clearly, Michiana anticipated some profit from this single sale, at least until the litigation started. But "financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State."[57] We find none here.

## III

The court of appeals affirmed on the basis of two contacts between Michiana and Texas: (1) misrepresentations Michiana allegedly made in response to a phone call from Holten, and (2) Michiana's arrangements with a shipper to deliver the RV to Holten for use in Texas. Neither is sufficient.

### A. Shipping to Texas

The second ground is easily disposable. Delivery in Texas was at Holten's sole request and sole expense. If a seller of chattels is subject to suit wherever a customer requests delivery, then the chattel has become its agent for service of process—a conclusion the United States Supreme Court has expressly rejected.[58]

We too rejected this argument in *CMMC*, in which we stated: "The sole question in this case is whether the Four-teenth Amendment permits a state court to take personal jurisdiction over a foreign manufacturer merely because it knew its allegedly defective product would be shipped to that state. *We answer no*, and thus reverse...."[59] Accordingly, we must do the same here.

### B. Committing a Tort "in" Texas

The court of appeals relied most heavily on the first ground—Holten's allegation that Michiana committed a tort in Texas.

Allegations that a tort was committed in Texas satisfy the Texas Long–Arm Statute,[60] but not necessarily the U.S. Constitution; the broad language of the former extends only as far as the latter will permit.[61] Thus, for example, the plaintiffs in both *Woodson* and *CMMC* alleged torts, and the defendants surely foresaw that defective products could harm local buyers—but in neither case was that enough to establish jurisdiction.[62]

The court below joined many of its sister courts in stating the following as a rule of jurisdiction: "If a tortfeasor knows that the brunt of the injury will be felt by a particular resident in the forum state, he must reasonably anticipate being haled into court there to answer for his actions."[63] But neither this Court nor the

---

57. *Woodson*, 444 U.S. at 299, 100 S.Ct. 559.

58. *Id.* at 296, 100 S.Ct. 559.

59. 929 S.W.2d 435, 436 (Tex.1996) (emphasis added). *CMMC* also made clear that, to the extent of any conflict, our earlier opinion in *Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91 (Tex.1988) should not be read to extend stream-of-commerce jurisdiction to a single sale. 929 S.W.2d at 439–40.

60. TEX. CIV. PRAC. & REM.CODE § 17.042(2).

61. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002); *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977).

62. *Woodson*, 444 U.S. at 288, 100 S.Ct. 559; *CMMC*, 929 S.W.2d at 437; *see also Antonio v. Marino*, 910 S.W.2d 624, 628 (Tex.App.—Houston [14th Dist.] 1995, no writ) (holding nonresident shipowner whose agent assaulted and denied wages to seamen in Texas port had not purposefully availed itself of Texas as ship's location was fortuitous).

63. 127 S.W.3d at 95; *Morris v. Powell*, 150 S.W.3d 212, 221 (Tex.App.—San Antonio 2004, no pet.); *Stern v. KEI Consultants, Ltd.*, 123 S.W.3d 482, 490 (Tex.App.—San Antonio 2003, no pet.); *AmQuip Corp. v. Cloud*, 73 S.W.3d 380, 386 (Tex.App.—Houston [1st Dist.] 2002, no pet.); *Ahadi v. Ahadi*, 61 S.W.3d 714, 720 (Tex.App.—Corpus Christi

United States Supreme Court has ever said so.

To the contrary, twenty years ago the United States Supreme Court wrote: "Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." [64] This Court too has expressly rejected jurisdiction "based solely upon the effects or consequences of an alleged conspiracy" in the forum state.[65] Instead, it is "the defendant's conduct and connection with the forum" that are critical.[66]

It is true that on one occasion the United States Supreme Court found specific jurisdiction based on alleged wrongdoing intentionally directed at a forum resident. In *Calder v. Jones,* a reporter and editor collaborated on an allegedly defamatory article, but they did so knowing the article was for their employer, the *National Enquirer,* which sold more than 600,000 copies in the forum state every week.[67] Whether or not a jury found the article defamatory, there was no question the defendant's article constituted a substantial "presence" in the state.

Texas courts that base jurisdiction on torts committed during the receipt of an out-of-state phone call apparently assume that *Calder* would have come out the same way if the defamation had occurred in a single unsolicited phone call a nonresident answered from a single private individual in the forum state. But if "the defendant's conduct and connection with the forum" must play a critical role, the two cases cannot be the same.

A companion case decided by the same Court on the same day as *Calder* shows that the important factor was the extent of the defendant's activities, not merely the residence of the victim. In *Keeton v. Hustler Magazine, Inc.,* the victim of another allegedly defamatory article sued not in the state where she lived, but in a different state with a longer statute of limitations.[68] Noting that the defendant had sold more than 10,000 copies of its magazine every month in the forum state, the Supreme Court held that "it must reasonably anticipate being haled into court there." [69]

Our dissenting colleagues cite no other authority that a single conversation with a private citizen constitutes purposeful availment of any jurisdiction in which that citizen happens to live. While torts were alleged in some of the cases cited in the dissent, the defendant's conduct in each case was much more extensive and was aimed at getting extensive business in or

2001, pet. denied); *Shapolsky v. Brewton,* 56 S.W.3d 120, 134 (Tex.App.—Houston [14th Dist.] 2001, pet. denied); *Royal Mortg. Corp. v. Montague,* 41 S.W.3d 721, 731 (Tex.App.—Fort Worth 2001, no pet.); *Mem'l Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 650 (Tex.App.—Houston [14th Dist.] 1992, no writ); *see also Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir.1988).

**64.** *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

**65.** *National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 773 (Tex.1995).

**66.** *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174 (quoting *Woodson,* 444 U.S. at 297, 100 S.Ct. 559).

**67.** *Calder v. Jones,* 465 U.S. 783, 785 n. 2, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

**68.** 465 U.S. 770, 772, 778, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

**69.** *Id.* at 781, 104 S.Ct. 1473.

from the forum state.[70] Exercising jurisdiction here would go far beyond anything we have approved in other tort cases.

## C. The Consequences

Several problems arise if jurisdiction turns not on a defendant's contacts, but on where it "directed a tort." First, it shifts a court's focus from the "relationship among the *defendant*, the forum, and the litigation"[71] to the relationship among the *"plaintiff*, the forum ... and the litigation."[72] The place where a plaintiff relies on fraud may determine the choice of law,[73] but choice-of-law analysis considers all parties, local courts, legal policies, interested states, and the interstate and international systems.[74] By contrast, minimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant.[75]

██ Second, directed-a-tort jurisdiction confuses the roles of judge and jury by equating the jurisdictional inquiry with the underlying merits. If purposeful availment depends on whether a tort was directed toward Texas, then a nonresident may defeat jurisdiction by proving there was no tort.[76] Personal jurisdiction is a

**70.** *See D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547 (5th Cir.1985) (basing jurisdiction on nonresident's transfer of its distributorship rights in forum state); *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1189–90 (5th Cir.1984) (basing jurisdiction on acts that sought to obtain business in Texas); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333–34 (5th Cir. 1982) (basing jurisdiction on defamatory phone call to district attorney attempting to wrest business from resident); *Miss. Interstate Exp. Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006, 1008 (5th Cir.1982) (basing jurisdiction on nineteen shipping contracts between nonresident broker and resident trucking firm). Especially troubling is the Court's reliance on *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162 (5th Cir.1985), in which not only were the dispositive acts entirely different from anything here (i.e., a post-sale shipment of a defective replacement part to the forum state), but the court *expressly acknowledged* that jurisdiction *would not* exist on facts *identical* to those here. *Id.* at 1171 ("[T]he mere knowledge that [defendant] was selling to [forum state] residents would be insufficient to support the exercise of jurisdiction.").

**71.** *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)) (emphasis added).

**72.** *See Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) (emphasis added).

**73.** *See, e.g., Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, (Tex.App.-Houston [14th Dist.] 2003, no pet.); Restatement (Second) Conflict of Laws § 148(2)(a).

**74.** Restatement § 6.

**75.** *Burger King*, 471 U.S. at 481–82, 105 S.Ct. 2174.

**76.** *See, e.g., Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex.1995) (holding opposition to silica regulation could not form basis of jurisdiction as it was constitutionally protected activity); *Mabry v. Reid*, 130 S.W.3d 385, 389 (Tex.App.—Beaumont 2004, no pet.) (affirming order granting special appearance as some evidence supported trial court's factual determination that either there was no settlement agreement or it was not fraudulent); *Boissiere v. Nova Capital, LLC*, 106 S.W.3d 897, 904 (Tex.App.—Dallas 2003, no pet.) (affirming order denying special appearance as some evidence supported trial court's factual determination that nonresidents committed misrepresentation); *French v. Glorioso*, 94 S.W.3d 739, 746–47 (Tex.App.—San Antonio 2002, no pet.) (affirming order granting special appearance as some evidence supported trial court's factual determination that nonresident never made any misrepresentations to resident); *Runnells v. Firestone*, 746 S.W.2d 845, 851–52 (Tex.App.—Houston [14th Dist.] 1988, *writ denied*, 760 S.W.2d 240 (Tex.1988) (affirming order granting special appearance as some evidence supported trial court's factual determination that there was no contract).

question of law for the court, even if it requires resolving questions of fact.[77] But what if a judge and jury could disagree? May a trial judge effectively grant summary judgment in a local jurisdiction by deciding contested liability facts in favor of the defendant? And if a jury absolves a defendant of tort liability, is the judgment void because the court never had jurisdiction of the defendant in the first place? [78]

Business contacts are generally a matter of physical fact, while tort liability (especially in misrepresentation cases) turns on what the parties thought, said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in trying the latter.

Third, in cases dealing with commerce, a plaintiff often has the option to sue in either contract or tort. Here, for example, Holten alleged tort, contract, and statutory claims, as Texas law often allows a plaintiff to do.[79] If directing a tort at Texas is enough, then personal jurisdiction arises when plaintiffs allege a tort, but not when they allege breach of contract. Thus, the *defendant's* purposeful availment depends on the form of claim selected by the *plaintiff.*

Fourth, changes in technology have made reliance on phone calls obsolete as proof of purposeful availment. While the ubiquity of "caller ID" may allow nonresidents to know a caller's telephone number, that number no longer necessarily indicates anything about the caller's location. If jurisdiction can be based on phone conversations "directed at" a forum, how does a defendant avail itself of any jurisdiction when it can never know where the other party has forwarded calls or traveled with a mobile phone?

In their dissenting opinion, our colleagues remind us seven times that Michiana did not deny Holten's fraud allegations. Of course, Michiana did deny his allegations in its answer, but rightly focused its jurisdictional affidavits on lack of *contacts* rather than lack of *culpability.* Jurisdiction cannot turn on whether a defendant denies wrongdoing—as virtually all will. Nor can it turn on whether a plaintiff merely alleges wrongdoing—again as virtually all will. If committing a tort establishes jurisdiction, our colleagues will have to decide who is correct—and then the Texas jurisdictional rule will be: guilty nonresidents can be sued here, innocent ones cannot. The dissenting opinion shows little doubt on that score; [80] but if we address jurisdictional questions in this spirit, nonresidents will avoid not just our courts but our state and all its residents as well.

For the reasons stated above, we disapprove of those opinions holding that (1) specific jurisdiction is necessarily established by allegations or evidence that

77. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805–06 (Tex.2002).

78. *See CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996).

79. *See, e.g., PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship,* 146 S.W.3d 79, 83 (Tex.2004) (noting that Texas law allows consumers to assert warranty claims as breach of contract or violation of DTPA); *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,* 960 S.W.2d 41, 46 (Tex.1998)

(holding Texas law allows party fraudulently induced to sign contract to sue in contract or tort).

80. *See, e.g.,* 168 S.W.3d at 794 ("Today the Court holds that an out-of-state defendant who intentionally defrauds a Texas resident, with full knowledge that reliance and damages will occur in Texas, cannot be made to answer for its conduct in a Texas court simply because the defrauded Texan initiated the phone call.").

a nonresident committed a tort in a telephone call from a Texas number,[81] or that (2) specific jurisdiction turns on whether a defendant's contacts were tortious rather than the contacts themselves.[82]

## IV

Finally, the one-page contract signed by the parties provided that any litigation between them would occur in Indiana:

> CONTROLLING LAW AND PLACE OF SUIT. The law of the State, in which I [Holten] sign this contract, is the law which is to be used in interpreting the terms of the contract. You [Michiana] and I agree that if any dispute between us is submitted to a court for resolution, such legal proceeding or suit shall take place in the county in which your principle [sic.] offices are located.

Michiana asserted this clause as a separate ground for granting its special appearance, and moved to dismiss on that basis, but has not sought mandamus to enforce it. Instead, Michiana asserts the clause as additional proof that it never purposefully availed itself of the benefits and protections of Texas law.

■ We agree with the court of appeals that a forum-selection clause designating Indiana does not necessarily indicate Michiana had no minimum contacts anywhere else.[83] Generally, a forum-selection clause operates as consent to jurisdiction in one forum, not proof that the Constitution would allow no other.[84]

■ But this Court has held that deletion of a forum-selection clause designating a foreign jurisdiction is some evidence that local jurisdiction was anticipated.[85] By the same token, insertion of a clause designating a foreign forum suggests that no local availment was intended. The Supreme Court has held that choice-of-law provisions should not be ignored in considering whether a defendant has "purposefully invoked the benefits and protections of a State's laws."[86] For the same reasons,

---

**81.** *Boissiere v. Nova Capital, LLC,* 106 S.W.3d 897, 904–05 (Tex.App.—Dallas 2003, no pet.); *Ahadi v. Ahadi,* 61 S.W.3d 714, 720 (Tex. App.—Corpus Christi 2001, pet. denied); *Ring Power Sys. v. Int'l de Comercio Y Consultoria,* 39 S.W.3d 350, 353–54 (Tex.App.—Houston [14th Dist.] 2001, no pet.); *Mem. Hosp. Sys. v. Fisher Ins. Agency,* 835 S.W.2d 645, 650–51 (Tex.App.—Houston [14th Dist.] 1992, no writ).

**82.** *Mabry v. Reid,* 130 S.W.3d 385, 389 (Tex. App.—Beaumont 2004, no pet.) (affirming order granting special appearance as some evidence supported trial court's factual determination that either there was no settlement agreement or it was not fraudulent); *Boissiere v. Nova Capital, LLC,* 106 S.W.3d 897, 904 (Tex.App.—Dallas 2003, no pet.) (affirming order denying special appearance as some evidence supported trial court's factual determination that nonresidents committed misrepresentation); *French v. Glorioso,* 94 S.W.3d 739, 746–47 (Tex.App.—San Antonio 2002, no pet.) (affirming order granting spe-

cial appearance as some evidence supported trial court's factual determination that nonresident never made any misrepresentations to resident); *Runnells v. Firestone,* 746 S.W.2d 845, 851–52 (Tex.App.—Houston [14th Dist.] 1988), *writ denied,* 760 S.W.2d 240 (Tex.1988) (affirming order granting special appearance as some evidence supported trial court's factual determination that there was no contract).

**83.** 127 S.W.3d at 98.

**84.** *See, e.g., Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (upholding forum-selection clause without discussing contacts between nonresident passengers and forum state).

**85.** *See Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 437 (Tex.1982).

**86.** *Burger King,* 471 U.S. at 482, 105 S.Ct. 2174.

the forum-selection clause here cannot be ignored either.

■ Holten asserts three arguments in response. First, he asserts the forum-selection clause was waived because Michiana raised it shortly before the special appearance hearing, and at the hearing "agreed the clause was inapplicable." Although the special appearance was not decided until two years after filing, the record before us reflects little activity other than the special appearance, and nothing to suggest any prejudice to Holten from the delay.[87] As there was no reporter's record of the hearing, the alleged concession by counsel was not only unrecorded but unenforceable.[88]

Second, Holten argues the forum-selection clause is limited to disputes regarding "interpreting the terms of the contract," a phrase appearing in the same section but a preceding sentence. But the title of the paragraph shows that two different topics were addressed in it, and the forum-selection clause itself refers only to "*any* dispute between us" (emphasis added). The parties were not required to put these two sentences in two different paragraphs to show that one did not modify the other.

■ Third, Holten argues it was within the trial court's discretion to refuse to enforce this clause. But enforcement of a forum-selection clause is mandatory absent a showing that "enforcement would be un-

reasonable and unjust, or that the clause was invalid due to fraud or over-reaching."[89] Holten does not assert that the clause itself was fraudulently induced, and presented no evidence showing why enforcement would be unreasonable or unjust. Accordingly, he should be held to it.

\* \* \*

■ The Due Process Clause "ensure[s] that the States, through their courts, do not reach out beyond the limits imposed on them by their status as co-equal sovereigns in a federal system."[90] In the sixty years since *International Shoe*, the United States Supreme Court has decided only about a dozen minimum-contacts cases, but two of them reversed Texas courts: once for reaching too far,[91] and once for preventing a sister state from reaching far enough.[92] Ours is certainly a large state, but we must recognize our own limits and those of our coequal sovereigns.

The Due Process Clause of the United States Constitution forbids jurisdiction over:

● a nonresident automobile dealer whose only contact with the forum was a customer's decision to drive there;[93]

● a nonresident father whose only contact with the forum was his ex-wife's decision to move there;[94] and

---

87. *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 559 (Tex.2004) (per curiam) (holding forum-selection clause was not waived without showing of prejudice).

88. *See* Tex.R. Civ. P. 11.

89. *Automated Collection Techs., Inc.*, 156 S.W.3d at 559 (Tex.2004) (quoting *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex.2004)).

90. *Woodson*, 444 U.S. at 292, 100 S.Ct. 559.

91. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

92. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

93. *Woodson*, 444 U.S. at 296–99, 100 S.Ct. 559.

94. *Kulko v. Superior Court of California*, 436 U.S. 84, 93–94, 98 S.Ct. 1690, 56 L.Ed.2d 132(1978).

● a nonresident trustee whose only contact with the forum was the settlor's exercise of a power of appointment there.[95]

Because Michiana's only contact with Texas was Holten's decision to place his order from there, we reverse the court of appeals' judgment and render judgment dismissing the claims against Michiana for want of jurisdiction.

Justice MEDINA filed a dissenting opinion, in which Justice O'NEILL joined.

Justice WAINWRIGHT and Justice JOHNSON did not participate in the decision.

Justice MEDINA, joined by Justice O'NEILL, dissenting.

Today the Court holds that an out-of-state defendant who intentionally defrauds a Texas resident, with full knowledge that reliance and damages will occur in Texas, cannot be made to answer for its conduct in a Texas court simply because the defrauded Texan initiated the phone call. Because the assumption of jurisdiction by Texas courts in this case does not offend the due process clause, I dissent.

### I

This special appearance case arises out of James Holten's purchase of a motor home from Michiana Easy Livin' Country, Inc. Holten, a resident of Harris County, contacted Michiana regarding the purchase of a Class A Coachmen Catalina motor home, customized to meet certain specifications. According to Holten's affidavit, he informed Michiana that he resided in Texas and wanted the motor home delivered to his residence. Holten further avers that Michiana agreed to sell him the motor home, manufactured to his specifications, and to deliver its product to Texas,

but that the motor home did not meet his specifications. Although Michiana's affidavit disputes whether delivery in Texas was planned from the start, its affidavits do not dispute Holton's averments concerning Michiana's misrepresentations.

Holten sued Ford Motor Company, Coachmen Industries, Coachmen Recreational Vehicle Company, and Michiana for violations of the Texas Deceptive Trade Practices Consumer Protection Act, fraud, breach of warranty, and breach of contract. Holten alleged that at the time he purchased the motor home, Michiana represented to him that the motor home would (1) be constructed of solid wood fastened with screws, (2) not contain nails or staples, (3) contain a bathtub and shower, (4) contain a double-pedal foot-flush toilet, and (5) be serviceable by any authorized Ford dealer. Holten avers that these representations turned out to be false.

Nevertheless, the Court concludes that the undisputed evidence of misrepresentations regarding the custom motor home are not actionable in Texas because the contacts with Texas are too attenuated to support jurisdiction here. Because I believe that torts perpetrated in Texas on Texas residents are actionable in this state, I dissent.

### II

A nonresident defendant who commits a tort in Texas or transacts business with a Texas resident may be subject to the jurisdiction of a Texas court under the long-arm statute. Tex. Civ. Prac. & Rem.Code § 17.042. The tort of misrepresentation occurs in Texas when reliance occurs in Texas. *See Siskind v. Villa Found. for Educ.,*

---

**95.** *Hanson v. Denckla,* 357 U.S. 235, 251–54, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

*Inc.*, 642 S.W.2d 434, 437 (Tex.1982).[1] The record contains evidence that Michiana, knowing that Holten was a Texas resident and wished any motor home he purchased to be delivered to him in Texas, made misrepresentations to Holten upon which he relied in Texas. Therefore, on this record, it is undisputed that Michiana committed the tort of misrepresentation in Texas.

The Texas long-arm statute extends "as far as the federal constitutional requirements of due process will permit." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002). The due process clause prevents an individual from being subjected to jurisdiction in a forum "with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

A defendant's contacts with a forum state can support either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8, 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The parties agree that Michiana's contacts with Texas are insufficient to give rise to general jurisdiction, in which a state exercises jurisdiction in a suit that does not arise out of the defendant's contacts with the forum. *See id.* at 414 n. 9. But contacts that are insufficient to support general jurisdiction may still support specific jurisdiction. "Even a single purposeful contact may be sufficient to meet the requirements of minimum contacts when the cause of action arises from the contact." *Micromedia v. Automated Broadcast Controls*, 799 F.2d 230, 234 (5th Cir.1984), *citing McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there," the defendant must have " 'purposefully directed' his activities at residents of the forum," and the suit must result from "injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 (citations omitted). For our part, we have held that for a Texas court to exercise specific jurisdiction over a defendant, (1) the defendant's contact with Texas must be purposeful, and (2) the cause of action must arise from those contacts. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). Furthermore, "assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice." *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966).

Holten claims that Michiana is subject to specific jurisdiction. There is evidence, based on the affidavits, that Michiana had two significant contacts with Texas: (1) Michiana made misrepresentations about the motor home to Holten, knowing that he would rely on them in Texas and that any resulting damages would be suffered in Texas; and (2) Michiana shipped its product to Holten in Texas. This action clearly arises out of those contacts. The

1. *See also Ring Power Sys. v. Int'l de Comercio Y Consultoria*, 39 S.W.3d 350, 354 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1189–90 (5th Cir.1984) (stating that for jurisdictional purposes, a tort occurs in Texas if the resulting injury occurs in Texas).

question remains whether Michiana's contact with Texas was purposeful.

## III

### A

The unilateral actions of a plaintiff cannot form the basis for long arm jurisdiction. *See World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. 559. But when a tortfeasor commits a tort in the forum state by directing its actions toward the forum state with full knowledge that injury will occur in the forum state, jurisdiction is appropriate. *See Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 211 (5th Cir.1999), *citing Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *see also Mem. Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 650–52 (Tex. App.-Houston [14th Dist.] 1992, no writ) (holding that a single phone call was sufficient). Here, although Holten initiated contact, Michiana made the decision to deal with him, made misrepresentations to him knowing that he was in Texas, and shipped the motor home to Texas. Michiana's conduct was therefore sufficiently purposeful to support jurisdiction.

The Court makes much of the fact that this transaction arises primarily out of a single phone call. However, it is not the quantity or duration of contacts that matters in the specific jurisdiction context but the nature of the contacts. *Miss. Interstate Exp. Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1006 (5th Cir.1982); *see also Am. Type Culture Collection,* 83 S.W.3d at 810. When a defendant purposefully directs tortious conduct at a forum, whether in person, by correspondence, or in a single phone call, that defendant should expect to be subject to the forum's jurisdiction.[2]

A defendant's mere knowledge that its product will end up in the forum does not, without more, give rise to jurisdiction. *See CMMC v. Salinas,* 929 S.W.2d 435, 439 (Tex.1996). However, numerous courts have held that under the right circumstances, a single sale by an out-of-state defendant can give rise to jurisdiction in an action arising out of that sale.[3] And in *McGee v. International Life Insurance Company,* the Supreme Court held that a single insurance contract mailed to the forum could support specific jurisdiction. 355 U.S. at 223, 78 S.Ct. 199. Furthermore, when a plaintiff in a patent-infringement action alleges that the defendant

---

**2.** *See D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 547 (5th Cir.1985); *Brown v. Flowers Indus., Inc.,* 688 F.2d 328, 333–34 (5th Cir.1982) (holding that a single defamatory phone call directed at a forum was sufficient), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983); *Union Carbide,* 731 F.2d at 1189–90 (holding that out of state acts that caused in-state injury were sufficient); *see also Ahadi v. Ahadi,* 61 S.W.3d 714 (Tex.App.—Corpus Christi 2001, pet. denied); *Ring Power Sys.,* 39 S.W.3d at 354; *Rowland & Rowland, P.C. v. Tex. Employers Indem. Co.,* 973 S.W.2d 432, 435–36 (Tex.App.—Austin 1998, no pet.); *Mem. Hosp. Sys.,* 835 S.W.2d at 650–52.

**3.** *See Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162 (5th Cir.1985) ("The sale and shipment of the master cylinder into Mississippi

represented an affirmative act by Crimson to introduce its product into Mississippi for use in that state. By this shipment, Crimson purposefully availed itself of the privilege of conducting activities in Mississippi and its connection with the forum is such that it should reasonably anticipate being haled into court there...."); *Ajax Realty Corp. v. J.F. Zook, Inc.,* 493 F.2d 818 (4th Cir.1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973); *Edwards v. Radventures, Inc.,* 164 F.Supp.2d 190 (D.Mass.2001) (finding specific jurisdiction where Massachusetts plaintiff purchased a monoski via fax from a defendant with no other contacts with Massachusetts and was injured when the ski malfunctioned); *Houston Technical Ceramics, Inc. v. Iwao Jiki Kogyo, Co.,* 742 F.Supp. 387 (S.D.Tex.1990).

shipped the infringing material into the forum state "through an established distribution channel," and "[t]he cause of action is alleged to arise out of these activities[,][n]o more is usually required to establish specific jurisdiction." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed.Cir.1994), *cert. dismissed*, 512 U.S. 1273, 115 S.Ct. 18, 129 L.Ed.2d 917, *citing Burger King*, 471 U.S. at 472–73, 105 S.Ct. 2174; *see also No. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1578–79 (Fed.Cir.1994). One court has gone so far as to hold that "[o]nce a defendant knowingly enters into a contract through a website, ... that defendant has purposefully availed him or herself of the privileges of the forum state .... [and] may be subject to suit there." *Stewart v. Hennesey*, 214 F.Supp.2d 1198, 1203 (D.Utah 2002). I do not endorse that rule, but it further illustrates that finding jurisdiction on this record falls well within the pale.

In *World–Wide Volkswagen*, New York residents, who had purchased their automobile from a dealership in New York, were injured when their car caught fire in Oklahoma. The United States Supreme Court held that an Oklahoma court could not exercise personal jurisdiction over the dealership, which operated only in the northeast and had no way of knowing the automobile would end up in Oklahoma. *See World–Wide Volkswagen Corp.*, 444 U.S. 286, 100 S.Ct. 559. But the Court further stated that a "forum State does not exceed its powers under the due process clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297–98, 100 S.Ct. 559; *see also Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91, 93 (Tex.1988) (overruled in part on other grounds by *Gen. Motors Corp. v. Sanchez,*

997 S.W.2d 584, 594 (Tex.1999)). Contrary to the Court's assertion, the facts here materially differ from those in *World–Wide Volkswagen*. In that case, the defendant never agreed to send its product to Oklahoma—it was merely foreseeable that the car might end up in Oklahoma because car purchasers in New York sometimes drive to Oklahoma. Here, Michiana not only shipped its motor home to Texas with the full knowledge that a Texas resident would use it, but also directed misrepresentations toward Texas.

The Court also maintains that Michiana's contacts with Texas are no more substantial than those of the defendant in *CMMC v. Salinas*, 929 S.W.2d 435 (Tex. 1996). In that case, the plaintiff ordered a winepress from CMMC, a foreign corporation, through an out-of-state middleman. The plaintiff's only causes of action were for negligence and strict products liability; there was no evidence that CMMC committed any intentional torts in Texas by directing misrepresentations at a Texas buyer. Arguably, CMMC could have foreseen injury in Texas; but here, Michiana *knew* that injury would occur in Texas when it *deliberately* committed a tort there, as Holten avers. *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir.1988), is distinguishable on the same grounds. In that case, the Fifth Circuit held that no jurisdiction existed because there was no evidence that the defendant had "expressly aimed" its tortious conduct at Texas. *See id.* Injury only "occurred" in Texas because of the fortuity that the plaintiff's principal place of business was in Texas. *See id.* at 773. Here, there is evidence that any misrepresentation was knowingly aimed at Texas because Michiana, with the knowledge that Holten was a Texas resident who expected the motor home to be delivered to Texas,

made representations to him regarding the custom motor home.

The Court further errs in its analysis of the special appearance process when it states that "[i]f committing a tort establishes jurisdiction ... guilty nonresidents can be sued here[;] innocent ones cannot." 168 S.W.3d at 791. To establish jurisdiction, a plaintiff must plead facts sufficient to support jurisdiction; to overcome this, a defendant must negate all bases of jurisdiction. *See BMC Software*, 83 S.W.3d at 793. Because jurisdiction under the long arm statute's tort provision turns on whether the defendant committed a tort in Texas, facts supporting jurisdiction often relate to the merits of the case. However, to establish jurisdiction, there need only be a prima facie showing of a purposeful contact with Texas, not proof of liability in tort. *See Arterbury v. Am. Bank & Trust Co.*, 553 S.W.2d 943, 947–48 (Tex.Civ. App.—Texarkana 1977, no writ). Sometimes, as here, the same act is alleged to be both the purposeful contact and the tort, and under these circumstances prima facie proof of a potentially tortious act may be required. *See French v. Glorioso*, 94 S.W.3d 739, 746 (Tex.App.—San Antonio 2002, no pet.). Such a showing gives the trial court jurisdiction to determine ultimate liability in tort. *See Arterbury*, 553 S.W.2d at 948. A subsequent finding that a tort was not committed does not mean that the trial court lacked jurisdiction.[4]

The Court's suggestion that plaintiffs will always allege a tort to get jurisdiction is also misplaced. If a plaintiff can secure jurisdiction by averring that the defendant committed a tort, why can the plaintiff not achieve the same result by averring that the defendant traveled to Texas (which, I

assume, the Court would agree is sufficient)? Either case can easily turn into a swearing contest, but that is no justification for failure to give Texas residents the full protection of the long arm statute. We choose to decide jurisdiction based on allegations and averments. *See BMC Software*, 83 S.W.3d at 793. In any event, it is not the tortiousness of the defendant's conduct that creates jurisdiction; it is its purposefulness. Whether a tort was committed is a question for the trial on the merits.

Here, there were uncontroverted averments of a purposeful act directed toward Texas, which Michiana did not bother to refute. Thus, it can hardly be said that Michiana negated this basis of jurisdiction. *See BMC Software*, 83 S.W.3d at 793. The trial court therefore had jurisdiction to determine whether the alleged acts were in fact tortious.

### B

The Court makes much of the forum-selection clause in the contract of sale. Michiana's brief refers to the forum selection clause only as evidence of its own desire that litigation take place in Indiana. Sufficient contacts do not become insufficient simply because the defendant does not want to travel.

Furthermore, this interlocutory appeal under section 51.014(a)(7) of the Civil Practice and Remedies Code concerns the special appearance only. Texas law provides no interlocutory appeal from a denial of a motion for summary judgment based on a forum-selection clause. *See* Tex. Civ. Prac. & Rem.Code § 51.014. Even if the issue could be considered here, Michiana has not briefed the validity and enforceability of the clause, and it is thus not

---

4. *BMC Software*, 83 S.W.3d at 793. *See also Boissiere v. Nova Capital, LLC*, 106 S.W.3d 897, 904 (Tex.App.—Dallas 2003, no pet.). This stands in contrast to subject-matter juris-

diction. *See Tex. A & M Univ. v. Bishop*, 156 S.W.3d 580 (Tex.2005) (determining that no subject-matter jurisdiction existed only after a trial on the merits).

properly a part of this interlocutory appeal.

## IV

Finally, "the exercise of jurisdiction [must] comport[ ] with traditional notions of fair play and substantial justice." *BMC Software*, 83 S.W.3d at 795; *Asahi Metal Indus. Co. v.Super. Ct.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Factors courts consider are the burden on the defendant, the forum state's interest in adjudicating the controversy, the plaintiff's interest in obtaining efficient resolution of the case, and the shared interest of states in furthering their respective interests. *See Burger King*, 471 U.S. at 477, 105 S.Ct. 2174. The burden on Michiana is not great. This case arises out of Michiana's decision to avail itself of a business opportunity in Texas and to commit the tort of misrepresentation in Texas (intentionally, according to the only evidence in the record). Surely Texas has the right to expect that companies doing business with Texas residents can reasonably anticipate having to answer in Texas courts for torts they commit in Texas.

The Court urges that relying on where a tort was directed impermissibly shifts our focus from the defendant's relation to the forum to the plaintiff's relation to the forum. It does not, however, because knowingly directing a tort at a forum, as Michiana allegedly did, is itself a contact with the forum. The Court attempts to cloud the issue with hypotheticals about cell phones. 168 S.W.3d at 791. Certainly, if a defendant did not know, or were mistaken about, where it was directing its conduct, that "direction" could not serve as a valid basis for jurisdiction but that is not this case. Let there be no mistake: under the Court's opinion, a defendant who intentionally defrauds a Texas resident, with full knowledge that reliance and damages will occur in Texas, cannot be made to answer for its conduct in a Texas court so long as the plaintiff initiated the phone call.[5]

Nothing prevented Michiana from producing evidence to negate jurisdiction, if it existed. The trial court might have even ruled in Michiana's favor. *See French*, 94 S.W.3d at 747. But Michiana did not attempt to refute Holten's averment that it committed a tort in Texas. The trial court therefore did not err in denying Michiana's special appearance, and the court of appeals correctly affirmed the judgment of the trial court.

\* \* \* \*

This action arises out of Michiana's contacts with Texas. Because those contacts are sufficient to support specific jurisdiction in this case without violating due process, I would affirm the judgment of the court of appeals.

---

5. For example, the Court argues that a single defamatory phone call to an individual in the forum state is not enough to support jurisdiction in an action for libel. 168 S.W.3d at 791. However, the Fifth Circuit has held precisely the opposite that a single defamatory phone call to a United States Attorney in Mississippi was sufficient to create jurisdiction in Mississippi. *See Brown*, 688 F.2d at 333–34.