# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00373-CV

**Motor Vehicle Board and Motor Vehicle Division of the Texas Department of Transportation, Appellants**

**v.**

**Prevost Cars (US) Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. GN303916, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

The State of Texas has chosen to extensively regulate the sale and distribution of motor vehicles within its borders. The legislature has delegated enforcement of this regulatory scheme to the Motor Vehicle Board, and the statute requires any person who wishes to engage in business as a dealer or sell motor vehicles in Texas to obtain an appropriate license. Ignoring this legislative mandate, the majority confuses the issue of the Board's jurisdiction to regulate the sale and distribution of motor vehicles in Texas with the issue of the Board's personal jurisdiction over Prevost. Moreover, in contravention of the well-established standards of judicial review of agency decisions, the majority improperly substitutes its own judgment for that of the Board on questions committed to the Board's discretion. For these reasons, I respectfully dissent.

*The relevant issue is one of regulatory, not personal, jurisdiction*

In its pleadings to the Board, Prevost conceded that "[p]ersonal jurisdiction has nothing to do with whether [it] violated the Code. As a matter of fact, [Prevost] is qualified to do business in Texas and personal jurisdiction over it is obvious." Because Prevost does not dispute the Board's personal jurisdiction, the only relevant issue is whether Prevost has engaged in business as a dealer in Texas. The majority overlooks this concession, focusing instead on whether the Board could properly assert personal jurisdiction over Prevost. Thus, as a matter of law, the majority applies the wrong analysis.

The legislature granted the Board "exclusive original jurisdiction" and authority to regulate the business of selling and distributing motor vehicles because "[t]he distribution and sale of motor vehicles in this State vitally affects the general economy of this State and the public interest and welfare of its citizens." Tex. Rev. Civ. Stat. Ann. art. 4413(36) §§ 1.02, 3.01 (West Supp. 2002) (now codified at Tex. Occ. Code Ann. §§ 2301.001, .151 (West 2004)).[1] Additionally, the legislature has stated:

> It is the policy of this State and the purpose of this Act to exercise the State's police power to insure a sound system of distributing and selling motor vehicles through licensing and regulating manufacturers, distributors, converters, and dealers of those vehicles, and enforcing this Act as to other persons, in order to provide for compliance with manufacturer's warranties, and to prevent frauds, unfair practices, discriminations, impositions, and other abuses of our citizens.

---

[1] In 2003, the motor vehicle commission code was codified in Chapter 2301 of the Texas Occupations Code. For convenience, citation will be to the code as it existed at the time of the Board's decision.

*Id*. § 1.02 (now codified at Tex. Occ. Code Ann. § 2301.001 (West 2004)). This legislative policy includes the protection of local governmental entities like the City of Beaumont. But the majority fails to consider the significance of this comprehensive legislative mandate.

Assuming without deciding that Prevost's bid and offer to sell two buses to the City qualifies as "engaging in business as a dealer," the majority concludes that Prevost's bid, standing alone, is insufficient to subject Prevost to liability in Texas. In support of this conclusion, the majority relies on the Texas Supreme Court's decision in *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005). The majority's reliance on *Michiana* is misplaced. *Michiana* concerned whether an out-of-state manufacturer could be forced to defend itself against a lawsuit brought in the Texas courts by a Texas resident. *Id*. The issue in *Michiana* was expressly one of personal jurisdiction. That is not the issue here. Prevost concedes that it is subject to the Board's jurisdiction. As a matter of law, then, the only relevant issue is whether Prevost's conduct in offering, negotiating, and contracting to sell two buses to the City falls within the Board's jurisdiction under the former motor vehicle commission code. The court's decision in *Michiana* is inapposite.

### *Prevost's conduct falls squarely within the Board's regulatory jurisdiction*

The issue in this case is whether Prevost engaged in business as a dealer in Texas—the issue that the majority simply assumes without deciding. The record in this case demonstrates that Prevost submitted a formal bid to the City and offered to sell the City two buses. The record further reflects that the City accepted Prevost's offer and, thus, the contract was formed in Texas. Moreover, the City's original purchase order reflects that the buses were to be delivered

to Beaumont. It was only after a representative of the Texas Department of Transportation inquired about Prevost's Texas dealers' license information that the contract terms were changed to deliver the buses to Prevost's manufacturing facility in Roswell, New Mexico. The majority incorrectly assumes that this after-the-fact amendment to the contract terms cures any previous violation of Texas law.

The former motor vehicle commission code does not define what it means to "engage in business as a dealer" in Texas. Because the legislature has given the Board exclusive jurisdiction to regulate the business of selling and distributing motor vehicles in Texas, it is the Board, not this Court, that is entitled to define the meaning of that term, as well as the conduct that falls within the scope of that term. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36) § 3.01(a) (now codified at Tex. Occ. Code Ann. § 2301.151(a)). As the reviewing court, we defer to the Board's reasonable interpretation of the statute it is charged with enforcing. *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 863 S.W.2d 754, 758 (Tex. App.—Austin 1993, writ denied); *Texas Ass'n of Long Distance Tel. Cos. v. Public Util. Comm'n*, 798 S.W.2d 875, 884 (Tex. App.—Austin 1990, writ denied). More importantly, we do not, as the majority does here, substitute our judgment for that of the agency on questions committed to the agency's discretion.

There is no question that the issue of whether Prevost has engaged in business as a dealer in Texas is a question that has been committed to the Board's discretion. The legislature has delegated exclusive jurisdiction to the Board to regulate the sales and distribution of motor vehicles in Texas. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36) §§ 1.02, 3.01(a) (now codified at Tex. Occ. Code Ann. §§ 2301.001, .151). Notwithstanding this legislative choice, the majority impermissibly

4

substitutes its own judgment for that of the Board when it states, "We have already clarified that the relevant fact for determining where Prevost engaged in business is the location of the title transfer, not the location of the contract's initiation or acceptance." In doing so, the majority usurps the Board's roles as factfinder and decisionmaker and contravenes the legislative mandate that the Board "exercise the State's police power to insure a sound system of distributing and selling motor vehicles." *See id*. § 1.02 (now codified at Tex. Occ. Code Ann. § 2301.001).

The Board's interpretation of what it means to "engage in business as a dealer" in Texas is reasonable. As the Board explained in *Ford Motor Co.*, No. 00-0046-ENF (Motor Vehicle Div. Mar. 29, 2001), *aff'd*, 264 F.3d 493 (5th Cir. 2001), a wide variety of activities may constitute engaging in business as a dealer. *Ford* is relevant to the instant case only because the Board describes the various activities that constitute "engaging in business as a dealer." *See id*. In *Ford*, as in this case, the Board found that "one who makes definitive offers for sale has engaged in business as a dealer within the meaning of the [motor vehicle commission code]." *See id*.; *see also Prevost Cars (US) Inc.*, No. 02-0262-ENF (Motor Vehicle Div. June 5, 2003). The Board does not look at each activity in isolation, but it examines the conduct in its entirety. *See Ford Motor Co.*, No. 00-0046-ENF (Motor Vehicle Div. Mar. 29, 2001). Each transaction must be examined not as a snapshot in time, as suggested by the majority, but on a continuum from beginning to end.

In its attempt to distinguish *Ford*, however, the majority misapprehends the Board's holding. The majority attempts to distinguish *Ford* on the grounds that all of the activities in *Ford* occurred in Texas and all of the cars offered for sale by Ford were already in Texas. This attempt is unavailing because it ignores the Board's mandate to examine the full range of activities that occur

5

in each transaction. Here, Prevost sent a bid to sell two buses to the City.[2] Second, Prevost sent its offer via U.S. mail to Beaumont, Texas. Third, the City accepted Prevost's offer in Texas. The contract was thus formed in Texas. Together, the Board determined these activities constituted engaging in business as a dealer, and all of these activities occurred in Texas. Given the Board's exclusive jurisdiction to regulate the business of selling and distributing motor vehicles in Texas, the Board acted well within its discretion to find that Prevost's activities constituted "engaging in business as a dealer" *in Texas* and in violation of the former motor vehicle commission code. The Board's interpretation of Prevost's conduct is consistent with the Board's jurisdiction under the statute as well as its prior holding in *Ford*.

The majority ignores the Board's rationale and holding in *Ford* in favor of its own application of the Uniform Commercial Code. In support of its opinion that the transaction in this case occurred in New Mexico, not Texas, the majority looks to the UCC for the definition of "sale" in section 2.106, as well as the provision relating to the passing of title in section 2.401. *See* Tex. Bus. & Com. Code Ann. §§ 2.106, .401 (West 1994 & Supp. 2006). Noting that section 2.106 defines "sale" as "the passing of title from seller to buyer for a price," *id*. § 2.106, and section 2.401 provides that title passes at the time performance is completed, which occurs upon delivery of the goods, *id*. § 2.401(b), the majority concludes that because the City picked up the buses in New Mexico, title passed in New Mexico and performance was completed in New Mexico; therefore, this was a New Mexico transaction. By focusing only on the *end* of the transaction continuum, the

___

[2] The majority characterizes Prevost's bid as merely a "response to the City's solicitation." While Prevost's bid may have been a "response" in the general sense of that term, it was also an *offer* to sell new motor vehicles—namely, two buses—to the City.

6

majority fails to consider Prevost's activities at the beginning, much less Prevost's activities as a whole, as required under the statute and *Ford*.

Nowhere in the former motor vehicle commission code or the current occupations code does the legislature provide that the UCC controls the Board's interpretation and enforcement of the law. Likewise, the first comment to section 2.401 of the UCC states that section 2.401 "deals with the issues *between seller and buyer* in terms of step by step performance or non-performance under the contract for sale." *Id*. § 2.401 cmt. 1 (emphasis added). Section 1.102 of the UCC provides that two of the underlying purposes and policies of the UCC are "to simplify, clarify and modernize the law governing commercial transactions" and " to permit the continued expansion of commercial practices through custom, usage and agreement of the parties." *Id*. § 1.103(a)(1)–(2) (West Supp. 2006). These provisions make clear that while the UCC may apply to and govern commercial transactions between private parties, the UCC does not govern the Board's authority to regulate the sale and distribution of motor vehicles in Texas. And neither party argues that the UCC governs the Board's authority nor cabins its discretion.

***There is substantial evidence in the record to support the Board's determination***

Although the majority recites the applicable standards of review under the substantial evidence rule, it gives only lip service to those standards, substituting its own judgment for that of the Board. The correct substantial evidence rule test is whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action. *Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 364 (Tex. 1983); *Dotson v. Texas State Bd. of Med. Exam'rs*, 612 S.W.2d 921, 922 (Tex. 1981). Although substantial

7

evidence is more than a mere scintilla, the evidence in the record may preponderate against the decision of the agency and nonetheless amount to substantial evidence. *Texas Health Facilities v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984).

The record in this case reflects that Prevost not only engaged in business as a dealer by offering to sell new motor vehicles to the City, but that Prevost did so in Texas when it sent its bid to the City and the City accepted, thereby forming a Texas contract. Based on the record evidence described above, reasonable minds could have reached the conclusion reached by the Board. Because Prevost was not licensed as a dealer in Texas, reasonable minds could have concluded that Prevost's activities violated Texas law—namely, sections 4.01 and 5.04 of the former motor vehicle commission code. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36) §§ 4.01(a), 5.04(a) (West Supp. 2002) (now codified at Tex. Occ. Code Ann. §§ 2301.251(a)(1), .252(a) (West 2004)). The record evidence is "more than a mere scintilla" and certainly constitutes substantial evidence to support the Board's order. *See Charter Medical–Dallas, Inc.*, 665 S.W.2d at 452.

In contrast, the majority's view that Prevost's post-contractual amendment to deliver the buses in New Mexico somehow cures the pre-delivery violations of Texas law is unsupported by the record. The record reflects that this was not a one-time occurrence, but rather a pattern of conduct engaged in by Prevost to exploit the Texas bus market. The record evidence admitted in this case includes a price/cost analysis prepared by the City in anticipation of its purchase of these two buses from Prevost. In that analysis, the City notes that Prevost sold ten buses to Citibus in Lubbock, Texas, on June 23, 2000, at a bid price of $254,934 each, and five RTS coaches on August 8, 2001, at a bid price of $258,934 each. In addition, DART in Dallas, Texas, purchased 110 RTS

8

coaches on February 9, 2001, at a bid price of $303,036 each, and Texas A&M University purchased 22 RTS coaches on July 21, 2001, at a bid price of $250,000 each. These sales alone total more than $42.6 million. Although these particular sales were not before the Board, Prevost did not object to the admission of this evidence, and the Board was entitled to consider it when making its decision in this case. Even assuming that Prevost arranged for the delivery of all of these buses outside the State of Texas, that does not detract from the fact that many of its activities in offering, negotiating, and contracting to sell these buses occurred within the State of Texas.

For the majority to allow Prevost's after-the-fact attempted cure to override its repeated efforts to circumvent the Texas licensing and regulatory requirements directly contravenes the statute. Section 1.04 of the former motor vehicle commission code provides that "[a]n agreement to waive the terms of this Act is void and unenforceable." *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36) § 1.04 (now codified at Tex. Occ. Code Ann. § 2301.003(b) (West 2004)). Yet, that is exactly what the majority condones in its decision here.

By allowing Prevost to structure the terms of its contract with the City to avoid regulation by the Board, the majority encourages other out-of-state businesses to do the same. Such a result will have ripple effects across the state in other contexts. For example, the tax code provides that each corporation that "does business in this state" is subject to franchise taxes. Tex. Tax Code Ann. § 171.001(a) (West 2002). Under the majority's interpretation, an out-of-state business could avoid state franchise taxes altogether simply by contracting for its Texas buyers to pick up their purchases at the state line. In addition, under the insurance code, the legislature has specified that the mere act of "making or proposing to make" an insurance contract constitutes engaging in the

9

business of insurance and subjects a party to regulation by the Texas Department of Insurance. Tex. Ins. Code Ann. § 101.051 (West Supp. 2006). But, under the majority's view, the Board should not even consider where the contract was formed. Where, as here, the legislature has delegated exclusive jurisdiction to regulate the sale and distribution of motor vehicles to the Board, the majority must refrain from substituting its judgment for that of the agency.

## CONCLUSION

Because the legislature charged the Board, and not this Court, with exclusive jurisdiction to regulate the sales and distribution of motor vehicles in Texas and the record reflects that the Board's order was supported by substantial evidence, I would reverse the trial court's judgment and affirm the Board's order.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Filed:   September 26, 2006

10