Karen L. ROGERS, Appellant,

v.

TEXWEST, L.L.C. and William L. Rogers, Appellees.

No. 05–07–01594–CV.

Court of Appeals of Texas, Dallas.

Aug. 12, 2008.

Rehearing Overruled Sept. 12, 2008.

D. Mitchell McFarland, Carrie Schadle, Harrison, Bettis, Staff, McFarland & Weems, LLP, Houston, TX, for Appellant.

Stephen David Wilson and Thomas F. Loose, Locke Lord Bissell & Liddell LLP, Dallas, TX, for Appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice MORRIS.

This is an appeal from the denial of a special appearance challenging the trial court's personal jurisdiction. In two issues, Karen L. Rogers contends the trial court erred in ruling it had jurisdiction over her. She contends she lacks sufficient contacts with Texas and the exercise of jurisdiction over her by a Texas court violates constitutional standards of fair play and substantial justice. After reviewing the record, we conclude the trial court was correct in denying Karen's challenge to its jurisdiction.

### I.

This suit was brought as a declaratory judgment action to construe several provisions of a limited partnership agreement signed by Karen L. Rogers and William L. Rogers. The parties created the partnership, Red Boots Investments, L.P., as part of a stipulated judgment rendered by a California court. The court's judgment dissolved Karen and William's marriage. TexWest, L.L.C. is the general partner of Red Boots and William is the manager of TexWest. Pursuant to the terms of the agreement, the principal place of business for the partnership is Dallas, Texas, where William now resides. In addition, the partnership agreement specifies that the partnership be "duly and properly qualified to transact business in Texas." The rights and obligations of the parties under the partnership agreement, however, are to be governed by, interpreted, construed, and enforced in accordance with the laws of California.

The purpose of the partnership, as stated in the partnership agreement, is to receive the marital assets awarded to Karen and William and manage those assets with a view toward their disposition, sale, trade, and conversion into liquid investments. The partnership would then be dissolved upon completion of the sale of the assets or conversion of the assets into liquid investments and readily marketable securities. In any event, the partnership would be dissolved at midnight on September 8, 2011, unless the general partner received written consent from Karen to extend the date of dissolution. Until the partnership is dissolved, the agreement specifies that Karen receive a distribution based on the net income of the partnership as well as a minimum monthly distribution of $10,000 plus amounts necessary for Karen to cover her federal and state income tax liabilities.

According to William's affidavit testimony, after the partnership began conducting business, Karen placed telephone calls and sent e-mails to him in Dallas asking about investment matters and raising questions about the interpretation of the partnership agreement. According to William, Karen also threatened to bring litigation. Based on these communications, William brought this action on behalf of himself and TexWest seeking construction of the agreement's distribution requirements. Karen responded by filing a special appearance challenging the trial court's personal jurisdiction.

In her special appearance, Karen contended she did not have sufficient contact with Texas to support the court's jurisdiction over her. Karen testified by affidavit that her only contact with Texas was her ownership interest in the Red Boots limited partnership. According to Karen, this contact was insufficient to support jurisdiction.

William responded that in creating the limited partnership, Karen specifically agreed to base the partnership in Dallas and have the partnership transact business in Texas. William noted that Karen receives substantial financial benefit from the business dealings of the partnership. William argued that, because this suit concerns the terms of the limited partnership agreement, Karen's conduct was more than sufficient to create a connection to the forum that gives Texas specific jurisdiction over her.

After reviewing the pleadings and evidence presented, the trial court denied Karen's special appearance. Karen did not request findings of fact or conclusions of law. She brought this appeal arguing the trial court erred in its ruling.

## II.

Karen presents two issues on appeal. She first contends the trial court erred in denying her special appearance because she did not purposefully conduct any activities in Texas that would establish the necessary minimum contacts for in personam jurisdiction. Second, she contends the exercise of jurisdiction by a Texas court in this case would violate constitutional standards of fair play and substantial justice. Whether a court may exercise personal jurisdiction over a nonresident defendant is a question of law. *See BMC Software Belgium N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). Where, as here, the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all findings supported by evidence necessary to support the order are implied. *Id.*

Under a minimum-contacts analysis, a defendant's contacts with a forum state can give rise either to general or specific jurisdiction. *CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996). Specific jurisdiction is established when a defendant's alleged liability arises from or is related to her activity within the forum. *Id.* The defendant's conduct, regardless of where it takes place, must justify the conclusion that she would reasonably anticipate being sued in a Texas court. *See Hagerty Partners P'ship v. Livingston,* 128 S.W.3d 416, 420 (Tex.App.-Dallas 2004, pet. denied). It is the quality and nature of the defendant's contacts with the forum, rather than their number, that is important to the minimum-contacts analysis. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990).

In this case, although William alleges jurisdiction exists based on a variety of contacts Karen has had with the state of Texas, the focus of the jurisdictional analysis is her role in the limited partnership based in Dallas. It is the creation of this partnership that forms the basis of the claims brought against Karen. Therefore, we begin by examining whether Karen's contacts with the forum, through creation of the partnership, give rise to specific jurisdiction.

The Texas Supreme Court has held that the "touchstone" of jurisdictional due process is "purposeful availment." *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005). For personal jurisdiction to arise, the defendant must purposefully avail herself of the privilege of conducting activities within the forum state thereby invoking the benefits and protections of its laws. *Id.* Here, the evidence shows that Karen agreed with William, after much negotiation, to

create a limited partnership with its principal place of business in Dallas, Texas. Karen further agreed that the partnership would be qualified to transact business in Texas. The agreement does not specify any other state in which the partnership would be qualified to transact business. The purpose of the partnership is to manage the assets awarded to Karen and William in their divorce with a view toward their disposition and conversion into liquid assets. TexWest, as general partner, distributes the cash received by the partnership to the partners pro rata, and Karen receives, individually, a monthly minimum payment from the partnership of $10,000 plus amounts necessary to cover her individual federal and state income tax liabilities. The management of the assets is handled by TexWest in Dallas, Texas, as stated in the agreement, and all of the partnership's depository bank accounts are maintained in Dallas, Texas.

Based on the foregoing, we conclude Karen should have reasonably anticipated that, if a dispute arose about the limited partnership agreement, she could be sued in a Texas court. She signed an agreement to create a limited partnership that operates entirely in Texas. And Karen profits from the business the partnership conducts in the forum. Although the partnership agreement must be construed under California law, the partnership business from which Karen receives cash distributions is conducted largely in Texas and is subject to Texas law. Accordingly, Karen has purposefully availed herself of the privileges and benefits of conducting business here.

Karen argues that because she is a limited partner and has no say in the management or control of the partnership business, her role in the partnership cannot be used to support jurisdiction. Karen cites to two cases for the proposition that the activities of a partnership cannot be used create jurisdiction over the limited partners because limited partners have no voice in the management of partnership business.[1] This suit, however, does not involve Karen's liability for the actions of the partnership. The suit arises out of the creation of the partnership, a process in which Karen had a substantial voice.

Karen also contends that, as a limited partner, she had no say in the location of the partnership because the partnership agreement allows TexWest to determine the location of the partnership's principal place of business. This argument ignores the fact that the only location specified in the agreement, and to which Karen specifically agreed, is in Dallas, Texas. Furthermore, Texas is the only state Karen agreed to have the partnership qualified to transact business. Accordingly, the decision to locate the partnership's principal place of business in Texas was not unilaterally imposed on Karen.

Finally, Karen contends that the partnership agreement alone is insufficient to establish minimum contacts with Texas because a single contract cannot establish jurisdiction. In support of this argument, Karen relies on *Michiana*. *See Michiana*, 168 S.W.3d at 786. In *Michiana*, the Texas Supreme Court stated that a single contract with a Texas resident does not automatically establish jurisdiction. *Id.* The context in which this statement was made was a discussion of sales contracts. *Id.* The court held that there is "no purposeful availment in cases involving isolated sales solicited by consumers who proposed to use the product in a state where the defendant did no business." *Id.* The

---

1. Karen cites *Hotel Partners v. Craig*, 993 S.W.2d 116, 121 (Tex.App.-Dallas 1994, pet. denied) and *NCNB Texas Nat'l Bank v. Anderson*, 812 S.W.2d 441, 444 (Tex.App.-San Antonio 1991, no writ).

court went on to state, however, that a single contract may meet the purposeful availment standard in cases where the agreement involves many contacts between the defendant and the forum over a period of time. *Id.* at 787. The court used a franchise agreement as an example of the type of contract that may establish minimum contacts. *Id.*

The partnership agreement at issue in this case is more akin to a franchise agreement than an isolated sales contract for purposes of establishing minimum contacts. The partnership agreement provides for conducting business potentially over many years. Since the inception of the partnership, monthly disbursements have been paid to Karen out of a Texas bank account. Although Karen is not involved in the day-to-day operations of the business, she must consent to any change in the general partner's interest and to any assignment of a limited partner's interest. Furthermore, if the partnership is to continue doing business past the date set for its dissolution, it may only do so with Karen's consent. William testified that, throughout the existence of the partnership, Karen has placed phone calls and sent e-mails to the partnership offices in Dallas asking about investments and raising questions about the interpretation of the partnership agreement. According to William, it was these communications that precipitated his filing of this suit. Clearly, the contract at issue establishes a continuing relationship between Karen and the forum rather than an isolated transaction.

The creation of the partnership was not a unilateral activity. Karen was an active party to negotiating the contract, the substance of which is being performed in Texas. The terms of this contract are the critical issue in this suit. We conclude the trial court correctly determined that Karen had sufficient contact with Texas to establish in personam jurisdiction in this

case. We resolve Karen's first issue against her.

In her second issue, Karen contends the exercise of jurisdiction over her would offend constitutional standards of fair play and substantial justice. We examine several factors in determining this issue including: (1) the burden on the non-resident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in furthering substantive social policies. *See Asshauer v. Glimcher Realty Trust,* 228 S.W.3d 922, 929 (Tex. App.-Dallas 2007, no pet.). When minimum contacts with the forum state have been established, however, it is rare that the exercise of jurisdiction over the defendant does not comport with traditional notions of fair play and substantial justice. *Id.*

Karen asserts that the burden on her of litigating this suit in Texas would be extreme. The only evidence Karen points to on this matter is her affidavit. In the affidavit Karen references unspecified "substantial additional expense" associated with litigating in Texas and states that she has had to "mortgage [her] home to maintain a semblance of [her] marital standard of living." Karen's unsupported assertion of "substantial additional expense" is conclusory. As such, it is not probative evidence. *See Small v. Small,* 216 S.W.3d 872, 879–80 (Tex.App.-Beaumont 2007, pet. denied).

In response to Karen's argument of financial burden, William notes that the evidence shows Karen's estate is worth $10 million or more and she receives a tax-free monthly distribution from the partnership of at least $10,000. In the absence of any facts showing that litigating this suit in

Texas, as opposed to California, would substantially increase the burden to Karen, this factor does not weigh in Karen's favor.

Karen also makes various arguments generally contending the most appropriate forum for this dispute is the California court that rendered the stipulated judgment of divorce. It is the stipulated judgment that, in part, ordered the creation of the limited partnership at issue. Karen contends the California court "retained continuing and exclusive jurisdiction to resolve disagreement [sic] regarding the partnership terms." Karen cites no authority for this proposition, however. And, although the stipulated judgment states the California court retains jurisdiction to enforce all of the executory provisions of the judgment and to make orders to carry out the terms of the judgment, nothing in the judgment states that the court retains jurisdiction to interpret the terms of the limited partnership agreement.

Both California and Texas have an interest in adjudicating this dispute as it involves a California limited partnership doing business in Texas. Because this suit does not involve numerous complex issues or a large number of parties and potential witnesses, the factors of convenience, effectiveness, and efficiency do not weigh heavily in favor of either state. Finally, even though this case involves the application of California law, we conclude this factor alone does not make this one of the "rare cases" in which the exercise of jurisdiction over a party with minimum contacts does not comport with fair play and substantial justice. We resolve Karen's second issue against her.

We affirm the trial court's order denying Karen's special appearance challenging the trial court's jurisdiction.