**AFFIRMED; Opinion Filed August 5, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00048-CV

**NACHO REMODELING COMPANY, INC. D/B/A N. R. CO., Appellant**
**V.**
**CALSHERM PARTNERS, L.P. D/B/A SHERMAN OAKS APARTMENTS, ET AL.,**
**Appellees**

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-10-0571**

## MEMORANDUM OPINION
Before Justices Moseley, Lang, and Brown
Opinion by Justice Lang

Appellant Nacho Remodeling Company, Inc. (NRC) appeals the trial court's order granting appellees'[1] special appearances for lack of personal jurisdiction. NRC asserts two issues on appeal: (1) whether the nonresident limited partners of a Texas limited partnership are subject to the personal jurisdiction of Texas courts when a lawsuit is filed against these limited partners and their partnership by a Texas citizen for work performed on real property in Texas, and (2) whether the exercise of personal jurisdiction over the nonresident defendants would violate the due process guarantees of the United States and Texas Constitutions. We decide NRC's issues against it and affirm the trial court's order granting appellees' special appearance.

---

[1] Although the case's style names the "Appellees" as "Calsherm Partners, L.P.," NRC's brief identifies the parties to this appeal as "Jacques S. Yeager, Jr., Individually and as trustee of the Yeager Family Trust, the Yeager Family Trust, James L. Moore, and Kathleen Moore." Appellees' brief concedes this identity of parties is correct. We will refer to the appellees in this case as "the limited partners."

# I. FACTUAL AND PROCEDURAL BACKGROUND

On March 31, 2010, NRC brought suit against Calsherm Partners, L.P. (Calsherm) for claims relating to breach of contract, sworn account, and quantum meruit. This suit arose from a dispute over a contract between the parties in which NRC agreed to supply labor and materials to repair flood damage to the Sherman Oaks apartment complex in Sherman, Texas, a complex owned by Calsherm.

In its petition, NRC alleged it "fully and satisfactorily complet[ed] all of the necessary repair work" to the complex, pursuant to the contract between NRC and Calsherm. However, NRC asserted, Calsherm "refused" to pay NRC for its services.

On June 5, 2012, NRC filed its fourth amended petition in this matter, which added the limited partners as defendants.[2] On March 22, 2013, each of the limited partners filed a special appearance pursuant to Texas Rule of Civil Procedure 120a. Each special appearance was verified and included supporting affidavits purporting to show each of the limited partners' lack of contacts with the state of Texas.

On July 16, 2013, NRC responded to the limited partners' special appearances, arguing *inter alia* that the trial court had jurisdiction over the limited partners because they had voluntarily formed a "Texas limited partnership doing business in Texas." NRC did not file any controverting affidavits or evidence, nor did it object to the affidavits in support of the limited partners' special appearances.

On December 3, 2013, the trial court rendered an order concluding "as a matter of law . . . that the [limited partners] making Special Appearances are not amenable to process" by Texas

---

[2] In all, NRC's Fourth Amended Petition named as defendants: Calsherm Partners, L.P. d/b/a Sherman Oaks Apartments; 415 Archer, Inc.; Robert G. Moore II; Jacques S. Yeager, Jr.; James L. Moore; Kathleen L. Moore; and Yeager Family Trust. The "Agreement of Limited Partnership" forming Calsherm Partners L.P. named Brad Amman, James L. Moore and Kathleen L. Moore, as cotenants, and Yeager Family Trust as limited partners in the organization. Since Brad Amman has not been named in this suit, we will use the phrase " the limited partners" to refer only to the limited partners specified in Note 1, *supra*.

courts "due to a lack of minimum contacts" and that "the exercise of jurisdiction by the Court over the person or property of [the limited partners] will offend traditional notions of fair play and substantial justice." On this basis, the trial court granted the special appearances of the limited partners and dismissed them from the suit. This appeal followed.

## II. LEGAL AUTHORITIES

### A. Standard of Review

The trial court's exercise of personal jurisdiction over a nonresident defendant is a question of law, and the trial court's ruling on a special appearance is reviewed de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *see also Stull v. LaPlant*, 411 S.W.3d 129, 133 (Tex. App.—Dallas 2013, no pet.). "When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

Although an appellant may not challenge a trial court's conclusions of law for factual sufficiency, "the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness." *Id.* at 794. If the reviewing court determines the legal conclusion is in error, but the trial court nonetheless rendered the appropriate judgment, the erroneous conclusion does not require reversal. *Id.*

### B. Applicable Law

"The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants." *BMC Software Belgium, N.V.*, 83 S.W.3d at 795 (citing TEX. CIV. PRAC. & REM. CODE §§ 17.041-.045). Texas courts may exercise personal jurisdiction over nonresident defendants under the long-arm statute, which extends personal jurisdiction "as far as the due process protections in the United States Constitution permit." *Stull*, 411 S.W.3d at 133.

"Due process limits every state to exercise jurisdiction only when a nonresident defendant (1) has sufficient minimum, purposeful contact with the state, and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.*

The "touchstone" of jurisdictional due process is "purposeful availment." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). Thus, it is "essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (emphasis in original).

The defendant's activities must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). A nonresident defendant would not be subject to jurisdiction in a Texas court if its contacts with Texas were "random, fortuitous, or attenuated." *Id.* Further, this defendant could not be "haled into a Texas court for the unilateral acts of a third party." *Id.* The "quality and nature of the defendant's contacts, rather than their number" governs the inquiry in the minimum contacts analysis. *Id.* For example, in the context of a foreign-registered limited partnership headquartered in Texas, a limited partner's investment in the partnership was not an activity purposefully directed to Texas "because limited partners have no voice in management." *Hotel Partners v. Craig*, 993 S.W.2d 116, 121 (Tex. App.—Dallas 1994, pet. denied)*; but see Rogers v. TexWest, L.L.C.*, 261 S.W.3d 818, 822 (Tex. App.—Dallas 2008, no pet.) (holding trial court had personal jurisdiction over limited partner in suit arising out of "the creation of the partnership," but not involving partner's "liability for the actions of the partnership").

The plaintiff bears the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Moki Mac River Expeditions*, 221 S.W.3d at 574.

–4–

The nonresident defendant then assumes the burden of negating all the alleged bases for jurisdiction. *Id.* In ruling on a special appearance, the Texas Supreme Court has expressly disapproved of cases that held "specific jurisdiction turn[ed] on whether a defendant's contacts were tortious rather than the contacts themselves." *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 791-92; *see also Dalglish v. Royal Indem. Co.*, No. 09-06-069-CV, 2006 WL 3334543 (Tex. App.—Beaumont Nov. 16, 2006), at *3 ("Specific jurisdiction must turn on defendant's contacts, not where the defendant 'directed a tort.'").

## III. APPLICATION OF THE LAW TO THE FACTS

In this appeal, NRC "seeks relief" from the trial court's order granting the limited partners' special appearances. NRC articulates two issues on appeal: (1) whether the nonresident limited partners of a Texas limited partnership are subject to personal jurisdiction in a lawsuit filed by a Texas citizen seeking collection of a debt owed by the limited partnership for work performed on Texas real property; and (2) whether the exercise of personal jurisdiction over these nonresident defendants "would violate the due process guarantees of the United States and Texas Constitutions." Specifically, NRC asserts that, by "voluntarily creating a partnership under Texas law," the limited partners purposefully availed themselves of "the benefits of Texas law" so as to allow Texas courts to have jurisdiction over them in this suit.

The limited partners respond that the trial court applied "well established Texas Law" to conclude that a nonresident limited partner may not be haled into a Texas court based upon the actions of the limited partnership or a general partner. Further, the limited partners contend the special appearance was granted because the trial court only had before it the uncontroverted evidence and affidavits in support of their special appearances. Finally, the limited partners assert that, since NRC presented no evidence in opposition to the evidence offered in support of

–5–

the special appearances and further failed to object to that evidence, the trial court "properly" granted their special appearances. We will address both of NRC's issues together.

NRC bore the initial burden of pleading sufficient allegations to demonstrate the proper exercise of jurisdiction over the nonresident defendant limited partners. *See Moki Mac River Expeditions,* 221 S.W.3d at 574. Assuming NRC had met its burden, the limited partners were then obligated to negate "all the alleged bases for jurisdiction" in order to succeed in their special appearances. *See id.*

The record shows, once the limited partners filed their special appearances, NRC did not provide controverting evidence nor did it object to any of the evidence provided in support of the limited partners' special appearances. NRC explains in its reply brief that "such [action] was not needed or necessary" because

> [the limited partners'] act of voluntarily deciding to form a limited partnership under Texas law, for the sole purpose of deriving income from the operation of the Sherman Oaks Apartment in Sherman, Texas, is all that is needed to give a Texas court jurisdiction over [the limited partners] for matters relating to the Texas limited partnership formed by them and the apartment complex owned and operated by that partnership.

However, because this court "must accept as true, the clear, direct, and positive evidence of an undisputed affidavit, even of a party's agent," we are bound to accept as true the affidavits and evidence in support of the limited partners' special appearances. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 270 (Tex. 1992). In this case, this uncontroverted evidence established *inter alia* that the limited partners were all California residents and passive investors and had no purposeful contacts with Texas. It further established the limited partners were never involved in the partnership's daily operations, could not participate in the management or control of the partnership according to the terms of the partnership agreement, had no power to act or

bind the partnership, and "never purposefully engaged in business in the State of Texas with the intent of invoking the rights and privileges afforded to [Texas] residents." Unlike in *Rogers* where the limited partner's liability arose from the creation of the partnership itself, *see Rogers*, 261 S.W.3d at 822, the basis for jurisdiction in the present suit focuses on the limited partners' passive investment in the partnership. The limited partners' passive investments are not activities purposefully directed to Texas. *See Hotel Partners*, 993 S.W.2d at 121.

For these reasons, we decide against NRC on both of their issues.

## IV. CONCLUSION

Following the appropriate standard of review, we conclude the trial court was not in error when it sustained appellee's special appearance. We decide NRC's issues against it and affirm the trial court's order.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

140048F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NACHO REMODELING COMPANY, INC. D/B/A N. R. CO., Appellant

No. 05-14-00048-CV          V.

CALSHERM PARTNERS, L.P. D/B/A SHERMAN OAKS APARTMENTS, Appellee

On Appeal from the 15th Judicial District Court, Grayson County, Texas
Trial Court Cause No. CV-10-0571.
Opinion delivered by Justice Lang.   Justices Moseley and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee CALSHERM PARTNERS, L.P. D/B/A SHERMAN OAKS APARTMENTS recover its costs of this appeal from appellant NACHO REMODELING COMPANY, INC. D/B/A N. R. CO.

Judgment entered this 5th day of August, 2014.