ACCEPTED
05-15-00868-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
11/4/2015 5:18:15 PM
LISA MATZ
CLERK

No. 05-15-00868-CV

In the

# Court of Appeals for the Fifth District

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
11/4/2015 5:18:15 PM
LISA MATZ
Clerk

Dallas, Texas

Don A. Mitchell,
*Appellant*,

v.

Freese & Goss, PLLC, et al.,
*Appellees*,

From the 95th Judicial District Court, Dallas County, Texas
Cause No. DC-14-08251

# APPELLEES' BRIEF

Jeffrey Tillotson, SBN 20039200
LYNN TILLOTSON PINKER & COX
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Phone: 214.981.3800
Fax: 214.981.3839
jtillotson@lynnllp.com

Mikel J. Bowers, SBN 02734550
Jason P. Steed, SBN 24070671
BELL NUNNALLY & MARTIN LLP
3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204-2429
Phone: 214.740.1400
Fax: 214.740.1499
mbowers@bellnunnally.com
jsteed@bellnunnally.com

COUNSEL FOR APPELLEES

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Table of Authorities ........................................................................... 3

Introduction ...................................................................................... 5

Factual & Procedural Background ..................................................... 7

A.    Mitchell enters a joint venture with Freese & Goss ............... 7

B.    Mitchell turns joint-venture clients against his joint-venture partner, Freese & Goss .............................................. 9

C.    Freese & Goss files this lawsuit claiming Mitchell breached his fiduciary duties to the joint venture ................. 11

Summary of the Argument ................................................................ 12

Arguments and Authorities .............................................................. 13

1.    The trial court may exercise personal jurisdiction over Mitchell because Mitchell has established "minimum contacts" with Texas ........................................................... 15

    1.1.    Mitchell's contacts with Texas were purposeful ........... 15

        1.1.1.    Mitchell was part of a joint venture with Freese & Goss, a Texas law firm, and together they conducted substantial business in Texas ............................................... 17

        1.1.2.    Mitchell's tortious conduct included deliberately seeking out and recruiting Texas residents who were joint-venture clients, to bring suit against Mitchell's joint-venture partner, Freese & Goss. ............... 23

    1.2.    Freese & Goss's causes of action relate to Mitchell's purposeful contacts with Texas. .................. 26

2.    The trial court's exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice ............................................................... 28

Conclusion & Prayer ........................................................................ 31

Certificates ...................................................................................... 32

# TABLE OF AUTHORITIES

CASES

*Asahi Metal Indus. Co. v. Superior Court,*
480 U.S. 102 (1987) ............................................................28

*BMC Software Belgium, N.V. v. Marchand,*
83 S.W.3d 789 (Tex. 2002)........................................................28

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ............................................................ passim

*Capital Tech. Info. Serv's., Inc. v. Arias & Arias Consultores,*
270 S.W.3d 741 (Tex. App.—Dallas 2008, pet. denied)......... 16, 21

*Gordon & Doner, P.A. v. Joros,*
287 S.W.3d 325 (Tex. App.—Fort Worth 2009, no pet.) ..............22

*Gray Ritter & Graham, PC v. Goldman Phipps, PLLC,*
--- S.W.3d ---, 2015 WL 5895302 (Tex. App.—Corpus
Christi-Edinburg Oct. 8, 2015, no pet. h.) ............................20, 22

*Guardian Royal Exchange Assur., Ltd. v. English China
Clays, P.L.C.,*
815 S.W.2d 223 (Tex. 1991)......................................................29

*IRA Resources, Inc. v. Griego,*
221 S.W.3d 592 (Tex. 2007)................................................16, 20

*Kelly v. Gen. Interior Constr., Inc.,*
301 S.W.3d 653 (Tex. 2010)......................................................13

*Lombardo v. Bhattacharyya,*
437 S.W.3d 658 (Tex. App.—Dallas 2014, pet. denied)... 13, 14, 15

*Michiana Easy Livin' Country, Inc. v. Holten,*
168 S.W.3d 777 (2005)........................................................18, 24

*Moki Mac River Expeditions v. Drugg,*
  221 S.W.3d 569 (Tex. 2007)................................................ 15, 26, 27

*Moncrief Oil Int'l v. OAO Gazprom,*
  414 S.W.3d 142 (Tex. 2013)................................................. passim

*Ring Power Sys. v. Int'l de Comercio Y Consultoria,*
  39 S.W.3d 350 (Tex. App.—Houston [14th Dist.] 2001, no
  pet.).........................................................................................29

*Rogers v. TexWest, LLC,*
  261 S.W.3d 818 (Tex. App.—Dallas 2008, no pet.).............. passim

*Silbaugh v. Ramirez,*
  126 S.W.3d 88 (Tex. App.—Houston [1st Dist.] 2002, no
  pet.).........................................................................................23

*Tempest Broad. Corp. v. Imlay,*
  150 S.W.3d 861 (Tex. App.—Houston [14th Dist.] 2004,
  no pet.)....................................................................................29

*Wright v. Sage Engineering, Inc.,*
  137 S.W.3d 238 (Tex. App.—Houston [1st Dist.] 2004, pet.
  denied) ...............................................................................23, 29

STATUTES

Civ. Prac. & Rem. Code § 17.042.................................................... 14

## INTRODUCTION

The parties to this case—all of whom are attorneys—were involved in jointly representing clients in mass tort litigation in Mississippi. When that litigation entered settlement, Appellant Don Mitchell entered into a joint venture with Appellee Freese & Goss, PLLC, a Texas-based law firm, to bring another group of clients into the settlement.

But the parties' relationship went bad during the administration of the settlements. In this case, Appellees Freese & Goss, PLLC, Richard A. Freese, Tim K. Goss, Sheila M. Bossier, Dennis C. Sweet, and Sweet & Freese, PLLC allege that Mitchell breached his fiduciary duties to Freese & Goss—his joint-venture partner—by, among other things, recruiting joint-venture clients to turn and sue Freese & Goss (and other Appellees) for allegedly mishandling the settlement.

Mitchell barely mentions these allegations in his opening brief. Indeed, the Court would never know what this case is about from Mitchell's Statement of Facts (Appellant's Br. 2–10) because it never mentions the allegations against Mitchell that form the basis for this suit. Mitchell doesn't mention the allegations against him until the latter half of his brief (at 27–34).

Instead, Mitchell tries to focus the Court's attention on background disputes in Mississippi. This current dispute might be

called the Texas Breach-of-Duty Case. It arises from (a) Mitchell's partnership in a Texas-based joint venture and (b) Mitchell's breach of fiduciary duty—a breach that included purposefully reaching out to joint-venture clients, including Texas residents, and turning them against Mitchell's joint-venture partner, Freese & Goss. But the background to this Texas Breach-of-Duty Case involves three other disputes, beginning with the mass tort litigation in Mississippi. And Mitchell's opening brief focuses on those background disputes—and on their connections with Mississippi—in an effort to direct the Court's attention away from Mitchell's contacts with Texas.

The Court should reject Mitchell's attempts at misdirection. In this Texas Breach-of-Duty Case, the question is whether Mitchell had minimum contacts with Texas to justify resolving **this** dispute in a Texas court. Considering Mitchell's partnership with a Texas-based law firm, in a Texas-based joint venture, and considering Mitchell's purposeful contacts with joint-venture clients in Texas, the Court should affirm the trial court's determination that Mitchell's contacts with Texas are sufficient to support the exercise of personal jurisdiction.

As noted, there are three background disputes leading up to this Texas Breach-of-Duty Case. These background disputes may be labeled (1) "the PCB Litigation," (2) "the Fees Lawsuit," and (3) "the Client Lawsuits." The relevant details are as follows.

## A.  Mitchell enters a joint venture with Freese & Goss.

In 2007, Mitchell—a Mississippi lawyer—entered into a written joint-venture agreement with a firm called Sweet & Freese to represent plaintiffs in a mass tort action in Mississippi ("the PCB Litigation"). CR 19, 450, 456. Initially thousands of plaintiffs joined the mass action, including plaintiffs from Texas. CR 450. But over time many were released to seek separate counsel, reducing the number of plaintiffs to 348. CR 14–16, 450, 456. Later, when the PCB Litigation entered settlement negotiations in 2010, the decision was made to re-sign many of those previously discharged clients. CR 17, 451.

By this time Sweet & Freese no longer existed. CR 16, 451. Instead, Richard Freese had created a new firm with Tim Goss, a Dallas lawyer. Freese & Goss was registered as a Texas PLLC and located in Dallas, Texas. *See* CR 10, 451; *see also* Appellant's Br. 18 (acknowledging Freese & Goss is "a Texas-based firm"). So, as the PCB Litigation entered settlement in 2010, Mitchell and Freese &

7

Goss entered into a new joint venture pertaining to the processing and administration of the settlement, which included re-signing many of the previously discharged clients to a new joint-representation agreement (the "Mitchell/Freese & Goss Contract") so they could participate in the settlement. CR 17–19, 763–764. Notably, in furtherance of this new joint venture, Mitchell sought out and re-signed at least 30 Texas residents to the Mitchell/Freese & Goss Contract. CR 18, 451, 466.

Mitchell has acknowledged that his relationship with Freese & Goss constituted a joint venture. CR 18, 763. And Mitchell knew Freese & Goss was a Texas law firm. CR 451. Moreover, this new joint venture was itself largely Texas-based. Most of the work, processing and administering the settlement of the PCB Litigation, occurred at Freese & Goss's Dallas office. Cr. 17–18, 451; *see* RR 38:13–15 (Mitchell's attorney admitting settlement work was performed in Dallas). Client files and invoices were kept at the Dallas office. CR 451, 458–459. Some of the settlement proceeds (non-client funds) were at one time in Freese & Goss's Dallas bank account. CR 20, 1245. And Mitchell received compensation for his work in the joint venture from this Dallas account. CR 20, 1245.

In sum, it is undisputed that (1) Mitchell entered into a joint venture in 2010 with Freese & Goss, a Texas law firm, to find and jointly represent a group of clients in the settlement of the PCB

8

Litigation; (2) the joint venture's work of processing and administering the settlement occurred primarily in Texas; and (3) the joint-venture settlement involved Texas residents, many of whom were re-signed as clients by Mitchell.

## B. Mitchell turns joint-venture clients against his joint-venture partner, Freese & Goss.

The business relationship between Mitchell and Freese & Goss deteriorated during the administration of the settlement of the PCB Litigation, as Mitchell became dissatisfied with his share of attorney's fees. CR 20–22, 451. Subsequently, Mitchell hired Mississippi attorney Chuck McRae to represent him in suing Freese & Goss (and others) in an effort to obtain a greater share of the attorney's fees ("the Fees Lawsuit"). CR 21, 451. The objective of the Fees Lawsuit was for Mitchell to obtain a larger portion of the attorney's fees from Freese & Goss, generated from the settlement being processed and administered in Texas—and the fees he sought necessarily would come, in part, from Texas clients involved in the settlement. *See* CR 20–22.

But this Fees Lawsuit did not go as Mitchell hoped it would, so he and McRae devised a new strategy to pressure Freese & Goss to pay Mitchell more fees. *See* CR 20–22, 452. Mitchell and McRae approached another Mississippi attorney, Doug Wade, and enlisted him in helping them to contact some of the people who had signed

the Mitchell/Freese & Goss Contract as joint-venture clients in the settlement of the PCB Litigation. CR 22, 452, 1028, 1029.. In 2012, Wade was representing the estate of a client who was involved in the PCB Litigation, and Mitchell and McRae approached him at an estate hearing to discuss how Wade could seek out clients from the PCB Litigation on Mitchell and McRae's behalf. CR 1259, 1295. (For his part, Wade said he would never have been involved in these disputes, had it not been for that meeting with Mitchell and McRae. CR 1295.)

Acting together and through one another, Mitchell, McRae and Wade misrepresented to clients—who had been or continued to be jointly represented by Mitchell and Freese & Goss in the settlement of the PCB Litigation—that Freese & Goss had mishandled the Texas-based administration of the settlement, and that the clients were entitled to receive additional funds. CR 22, 452–453. McRae and Wade then filed seven different lawsuits against Freese & Goss, on behalf of some of these joint-venture clients ("the Client Lawsuits"). CR 22–24, 452, 1318, 1360.

Notably, nine Texas residents were recruited to participate in the Client Lawsuits against Freese & Goss—and eight of those nine Texas residents were among those who Mitchell had re-signed to the Mitchell/Freese & Goss Contract so they could participate in the settlement. CR 452–453, 466, 469.

10

In sum, Mitchell pursued contradictory positions. On the one hand, he sought a greater share of attorney's fees from the clients in the settlement. Then, on the other hand—through McRae and Wade—he sought to harm Freese & Goss by pushing some of those same clients to claim Freese & Goss had mishandled the administration of the settlement.

## C. Freese & Goss files this lawsuit claiming Mitchell breached his fiduciary duties to the joint venture.

Based on Mitchell's misconduct—for example, his involvement in making misrepresentations to joint-venture clients about Freese & Goss's handling of the settlement, and his involvement in recruiting joint-venture clients to file the Client Lawsuits against Freese & Goss—Freese & Goss filed this lawsuit (1) claiming Mitchell breached his fiduciary duties and (2) seeking a declaratory judgment dissolving the parties' joint venture. CR 7–31.

Mitchell responded by filing a special appearance, claiming the Texas trial court has no jurisdiction over him because he is a Mississippi resident who has been representing clients in Mississippi lawsuits. CR 36–40; *see generally* Appellant's Br.

After hearing evidence and arguments on this jurisdictional question, the trial court disagreed with Mitchell, finding (a) the "focus" of this dispute "is what occurred in Texas"; (b) the joint venture "was operating in Texas"; and (c) Mitchell was a "partner"

in the Texas-based joint venture—all of which was sufficient to warrant the trial court's exercise of personal jurisdiction over Mitchell. *See* RR 88:2–5; RR 89:11–14, 17–20; RR 95:8–10; 97:24–25; CR 2143 (order signed June 27, 2015).

## SUMMARY OF THE ARGUMENT

It is undisputed that Appellant Don Mitchell purposefully entered into a joint venture with Freese & Goss, a Texas-based law firm. This joint venture involved processing and administering the settlement of mass tort litigation—and it is undisputed that most of the work of processing and administering this settlement occurred in or from Freese & Goss's office in Dallas, Texas. Moreover, it is undisputed that Mitchell, in pursuit of this joint venture, purposefully contacted and re-signed at least 30 Texas residents as clients for representation in the joint-venture settlement.

Mitchell then sued to obtain a larger portion of attorney's fees from the Texas-based settlement—fees that would necessarily come, in part, from Texas-resident clients. And, through others, Mitchell purposefully contacted some of these Texas-resident clients, made misrepresentations to them regarding Freese & Goss' handling of the Texas-based settlement, and recruited some of these Texas-resident clients to bring lawsuits against Freese & Goss—Mitchell's joint-venture partner.

Because all of the above constitutes sufficient "minimum contacts" with Texas, the Court should affirm the trial court's determination that it may exercise specific personal jurisdiction over Mitchell.

## ARGUMENTS AND AUTHORITIES

A trial court's exercise of personal jurisdiction over a nonresident defendant is a question of law that the appellate court reviews *de novo. Moncrief Oil Int'l v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). When—as in this case—the trial court does not issue formal findings of fact and conclusions of law, the appellate court will imply all facts necessary to support the jurisdictional ruling. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). To the extent Mitchell challenges the sufficiency of evidence supporting any factual finding, he concedes this challenge fails if even a scintilla of evidence supports the finding. *See* Appellant's Br. 12.

After Appellees alleged facts to support the exercise of jurisdiction (see CR 11), the burden shifted to Mitchell to negate all bases for jurisdiction. *See Moncrief*, 414 S.W.3d at 149; *Lombardo v. Bhattacharyya*, 437 S.W.3d 658, 675–676 (Tex. App.—Dallas 2014, pet. denied)(stating burden shifts to defendant after plaintiff meets initial burden to assert jurisdiction by alleging nonresident

defendant did business in Texas). Here, Mitchell has failed to carry this burden.

The Texas Long-Arm Statute permits the exercise of personal jurisdiction over a nonresident defendant who "commits a tort in whole or in part in this state" or who "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." Civ. Prac. & Rem. Code § 17.042(1)–(2). Here, Mitchell entered into a joint-venture agreement with Freese & Goss, at least part of which was to be performed in Texas. And Mitchell breached his fiduciary duties to Freese & Goss through conduct that occurred, in part, in Texas. *See* CR 24–28; *see also* Factual & Procedural Background. This satisfies the Long-Arm Statute's requirements. *See Lombardo*, 437 S.W.3d at 679; Civ. Prac. & Rem. Code § 17.042(1)–(2).

To satisfy constitutional requirements of due process, the trial court may exercise personal jurisdiction only if (1) the nonresident defendant has established "minimum contacts" with Texas and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Moncrief*, 414 S.W.3d at 149. Here, both of these conditions are satisfied, as demonstrated below.

1.  **The trial court may exercise personal jurisdiction over Mitchell because Mitchell has established "minimum contacts" with Texas.**

A nonresident defendant's contacts with a forum state can give rise to (1) general personal jurisdiction or (2) specific personal jurisdiction. *See Moncrief*, 414 S.W.3d at 150. Here, Appellees allege, and the trial court agreed, that Texas has specific personal jurisdiction over Mitchell. CR 11–12, 2143.

A Texas court may exercise specific personal jurisdiction over a nonresident defendant when (1) the defendant's contacts with the forum state are "purposeful" and (2) the cause of action arises from or relates to those contacts. *Lombardo*, 437 S.W.3d at 677 (citing *Burger King*, 471 U.S. at 474–475). The focus is on the relationship between the nonresident defendant, the forum state, and the current litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575–576 (Tex. 2007).

### 1.1. Mitchell's contacts with Texas were purposeful.

The trial court may exercise personal jurisdiction when the defendant has purposefully availed himself of the forum state, thereby invoking the benefits and protections of its laws. *Rogers v. TexWest, LLC*, 261 S.W.3d 818, 820–821 (Tex. App.—Dallas 2008, no pet.). There are three aspects to determining "purposeful availment": (1) courts consider only the nonresident defendant's

15

contacts with the forum; (2) the acts upon which jurisdiction is based must be purposeful rather than random, fortuitous, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by availing himself of the forum state. *IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007).

The court focuses on the "quality and nature of the defendant's contacts with the forum, rather than their number." *Rogers*, 261 S.W.3d at 821. And purposeful availment relates to the defendant's expectations, not his geographical location: *i.e.*, a court correctly exercises personal jurisdiction when "[t]he defendant's conduct, **regardless of where it takes place** . . . justif[ies] the conclusion that [he] would reasonably anticipate being sued in a Texas court." *Rogers*, 261 S.W.3d at 821 (emphasis added); *Capital Tech. Info. Serv's., Inc. v. Arias & Arias Consultores,* 270 S.W.3d 741, 749 (Tex. App.—Dallas 2008, pet. denied) (citing *Burger King*, 471 U.S. at 474). Notably, a defendant's contacts with the forum state are purposeful when aimed at getting substantial business from or in the forum state. *Moncrief*, 437 S.W.3d at 153. And, again, "[p]hysical presence in the state is not required." *Id.* at 151.

As demonstrated below, the trial court's exercise of jurisdiction in this case is warranted because (1) Mitchell was part of a joint venture with Freese & Goss, a Texas law firm, and conducted

substantial joint-venture business in Texas; and (2) Mitchell's tortious conduct occurred, in part, in Texas.

### 1.1.1. Mitchell was part of a joint venture with Freese & Goss, a Texas law firm, and together they conducted substantial business in Texas.

Though the parties in this case are lawyers, this dispute is not about legal representation or the relationship between lawyers and their clients. This dispute arises from the business relationship between Mitchell and Freese & Goss, in the form of a joint venture to process and administer the settlement of the PCB Litigation. Mitchell knowingly and purposefully entered this joint venture with Freese & Goss, a Texas law firm, and he admits that much of the work of processing and administering the settlement occurred in Dallas, Texas. Moreover, in furtherance of the joint venture, Mitchell contacted and re-signed at least 30 Texas residents to be represented as clients in the Texas-based settlement. *See* Factual & Procedural Background.

The joint venture between Mitchell and Freese & Goss was similar to the business arrangement in *Rogers v. TexWest*. In *Rogers*, TexWest was a Texas corporation acting as the general partner in a partnership with Rogers, a limited partner and the nonresident defendant in the litigation. This Court examined "whether [the limited partner's] contacts with the forum, through

17

creation of the partnership, [gave] rise to specific jurisdiction." Because the general partner (TexWest) was a Texas LLC; because the partnership had its principal place of business in Texas; because the partnership managed its assets in Texas; and because the partnership's cash received was distributed by TexWest from Texas, this Court concluded that the trial court had personal jurisdiction over the nonresident limited partner. *See* 261 S.W.3d at 820–822.

The defendant in *Rogers* argued that the actions of the partnership should not form a basis for personal jurisdiction because, as a limited partner, the defendant had no actual control over the partnership's actions. *Id.* But the Court rejected this argument, finding the issue was the **formation** of the partnership itself—something in which the appellant "had a substantial voice." *Id.* Relying on the Supreme Court's decision in *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (2005), the defendant also argued that a single contract—the partnership agreement— could not form the basis for personal jurisdiction. *Id.* But the Court rejected this argument too, explaining that *Michiana* dealt with a single **sales** agreement. While a single sales agreement might not form the basis for personal jurisdiction, under *Michiana*, a single contract "may meet the purposeful availment standard in cases where the agreement involves many contacts between the

18

defendant and the forum over a period of time*." Id.* at 823. The Court then noted that "the creation of a partnership was not a unilateral activity. [The defendant] was an active party to negotiating the contract, the substance of which [was] to be performed in Texas." *Id.*

Like the creation of the limited partnership in *Rogers*, the formation of the joint venture in this case was not a unilateral activity. Mitchell purposefully entered the joint venture knowing that Freese & Goss was a Texas law firm. CR 17–19, 451. Mitchell also knew that the files for the settlement were kept in Dallas, and that most of the settlement work—*i.e.*, most of the work pertaining to the parties' joint venture—was being performed in Dallas. CR 451, 458–459. Mitchell was also paid from the Dallas office. CR 20, 1245. And, as a joint venturer, Mitchell was partly responsible for the administration of the settlement and had a greater degree of control and influence in joint-venture operations than the limited partner had in *Rogers*. *Cf*. 261 S.W.3d at 822. Therefore, just as the trial court had a basis for exercising jurisdiction over the limited partner in *Rogers*, the trial court has a basis for exercising jurisdiction over Mitchell.

Furthermore, in addition to forming and entering a joint venture with a Texas law firm, Mitchell actually sought substantial business from Texas by seeking out and re-signing 30 Texas

residents as clients, in furtherance of the joint-venture settlement the PCB Litigation. CR 18, 451, 466. This too, in itself, constitutes "purposeful availment" of the forum state. *See Moncrief*, 437 S.W.3d at 153; *Gray Ritter & Graham, PC v. Goldman Phipps, PLLC*, --- S.W.3d ---, 2015 WL 5895302, at *21 (Tex. App.—Corpus Christi-Edinburg Oct. 8, 2015, no pet. h.).

In *Gray Ritter*, the court of appeals found that the defendant worked with Texas lawyers and represented several Texas residents in multidistrict litigation—client relationships from which the defendant intended to benefit. *See* 2015 WL 5895302, at *21. The court held that "the span and breadth of the litigation's nexus with Texas" outweighed the fact that the defendant did much of his own legal work out of state. *Id.* Here, similarly, Mitchell worked with Texas lawyers (Freese & Goss) and represented at least 30 Texas residents in the settlement of mass tort litigation. CR 23–24, 466, 799. Even if much of Mitchell's own legal work occurred out of state, the "span and breadth" of the settlement's nexus with Texas supports the trial court's exercise of jurisdiction over Mitchell. *Cf. Gray Ritter*, 2015 WL 5895302, at *21.

Mitchell's relationship with these Texas clients and with Freese & Goss was not isolated or fortuitous. *Cf. IRA Resources*, 221 S.W.3d at 596. To the contrary, Mitchell purposefully entered the joint venture with Freese & Goss and he purposefully sought

20

out Texas residents to represent them in the joint-venture settlement. CR 18, 451, 466. Based on his joint venture with a Texas law firm and his efforts in re-signing at least 30 Texas residents in furtherance of that joint venture, Mitchell should have reasonably anticipated being haled into a Texas court for any dispute that might arise from the joint venture. *See Capital Tech.*, 270 S.W.3d at 749.

Mitchell contends that his relationship with Freese & Goss was a single, unilateral contact with Texas. Appellant's Br. 18. But the U.S. Supreme Court has explained that a contract represents just one step in the parties' relationship—a relationship that includes the parties' course of dealings before and after they form the agreement and the consequences of the contract itself. *Burger King*, 471 U.S. at 479. These consequences are "the real object" of the agreement, and these surrounding circumstances must be evaluated in determining personal jurisdiction. *Id*. Here, because the parties' joint venture involved (1) processing and administering the settlement in or from Freese & Goss's Dallas office and (2) Mitchell's efforts to contact and re-sign Texas residents as clients in the joint-venture settlement, the circumstances surrounding the joint-venture agreement support the Texas court's exercise of personal jurisdiction over Mitchell. *Cf. Burger King*, 471 U.S. at 479.

21

Mitchell cites *Gordon & Doner, P.A. v. Joros*, 287 S.W.3d 325, 328 (Tex. App.—Fort Worth 2009, no pet.), to argue that a joint venture does not constitute purposeful availment of the forum "where contract obligations are to be performed outside of Texas." Appellant's Br. 19. But this misconstrues both the nature of the parties' joint venture and the holding in *Joros*.

In *Joros* the plaintiff had named a nonresident attorney and a Texas law firm as defendants, then relied on the nonresident attorney's joint liability with the Texas law firm as a basis for the court's jurisdiction over the nonresident attorney. *Joros*, 287 S.W.3d at 328. The Fort Worth Court of Appeals held that imputed liability cannot form the basis for personal jurisdiction because it makes jurisdiction dependent upon the merits of the plaintiff's claim. *Id.* Here, Freese & Goss do not rely on any joint or imputed liability as a basis for asserting the trial court has jurisdiciton over Mitchell—because Mitchell is the only defendant remaining in this suit. Here, the formation, implementation, and consequences of the parties' joint venture form the basis for the trial court's specific personal jurisdiction over Mitchell. *Cf. Gray Ritter*, 2015 WL 5895302, at *21.Thus, *Joros* is inapplicable.

Because Mitchell purposefully entered into a joint venture with a Texas law firm; because much of the work of that joint venture was performed in Texas; and because Mitchell, in furtherance of

the joint venture, acting either himself or through others, purposefully sought out and re-signed Texas residents as clients in the Texas-based settlement, the trail court has a sufficient basis for exercising personal jurisdiction over Mitchell—and it should be no surprise to him that he has been haled into a Texas court—for the resolution of claims arising from Mitchell's breach of the fiduciary duties he owed to his joint venturer.

### 1.1.2. Mitchell's tortious conduct included deliberately seeking out and recruiting Texas residents who were joint-venture clients, to bring suit against Mitchell's joint-venture partner, Freese & Goss.

Texas has a strong interest in adjudicating causes of action that involve tortious contacts with the state or tortious acts against its residents. *See Wright v. Sage Engineering, Inc.*, 137 S.W.3d 238, 254 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ("Texas has a strong interest both in providing a forum for its residents and in holding parties who committed tortious acts against its residents accountable."); *Silbaugh v. Ramirez*, 126 S.W.3d 88, 96 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("Texas has an interest in ensuring that its citizens are protected from breach of contract and tortious acts committed by nonresidents conducting business in Texas."). Here, in addition to having business relationships and activities in Texas, Mitchell committed tortious acts, in part, in

Texas. Thus, Mitchell's tortious conduct also supports the trial court's exercise of personal jurisdiction.

The Supreme Court has held that Texas's interest in protecting its citizens against out-of-state tortfeasors may give rise to personal jurisdiction. *Moncrief*, 414 S.W.3d at 152 (citing *Michiana*, 168 S.W.3d at 790–791). A defendant's tortious contact supports personal jurisdiction, for example, where the defendant's contact was not random or fortuitous, but was aimed at getting business in or from the forum state. *Id.* at 152–153.

Here, Mitchell's tortious contacts with Texas were not random or fortuitous. Mitchell breached his fiduciary duty to his joint-venture partner, Freese & Goss, by acting with and through his intermediaries (McRae and Wade) to make misrepresentations to joint-venture clients and to recruit some of those joint-venture clients—including Texas residents—to bring at least seven Client Lawsuits against Freese & Goss. *See* Factual & Procedural Background. This constituted conduct aimed at getting "extensive business in or from the forum state." *Cf.* *Moncrief*, 414 S.W.3d at 152–153.

Mitchell claims his tortious conduct cannot form a basis for jurisdiction because it creates a circular "jurisdiction if guilty, no jurisdiction if innocent" problem. *See* Appellant's Br. 18. But recruiting Texas residents who are joint-venture clients to bring

suits against Freese & Goss is not an effect of tortious conduct; it is an **act** alleged to be tortious conduct. The trial court's determination of whether this act was tortious or not will have no impact on the fact that the act occurred partially in Texas, forming a basis for the Texas trial court to exercise jurisdiction.

Throughout his brief, Mitchell also relies on several professional-negligence cases to argue that his tortious conduct cannot support personal jurisdiction. *E.g.*, Appellant's Br. 24–25, 31–33 (citing, *e.g.*, *Bryan v. Gordon*, 384 S.W.3d 908 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Proskauer Rose LLP v. Pelican Trading, Inc.*, No. 14-08-00283-CV, 2009 Tex. App. LEXIS 667 (Tex. App.—Houston [14th Dist.[ Feb. 3, 2009, no pet.); *Markette v. X-Ray X-Press Corp*, 240 S.W.3d 464 (Tex. App.—Houston [14th Dist.] 2007, no pet.)).

None of those cases is applicable here. In those cases, the tortious conduct at issue was the provision of substandard legal work performed out of state. But this dispute is not about Mitchell's substandard representation of a Texas client, in legal work he performed out of state. This is not at all a dispute between lawyer and client. This is a dispute between business partners, arising from a Texas-based joint venture. *See* CR 7–31. Here, Mitchell breached his fiduciary duties to his joint-venture partner—Freese & Goss—by, through his own actions or through others, contacting

25

former joint-venture clients in Texas, making misrepresentations to them, and recruiting them to file at least seven different Client Lawsuits against Freese & Goss (and other Appellees). CR 22 –24, 452–453, 1318, 1360. In effect, Mitchell sought to undo or alter the Texas-based joint venture. That is, he sought to re-administer the settlements that had been administered by the joint venture in and from Freese & Goss's Dallas office—by either obtaining more attorney's fees for himself or forcing the settlement to distribute more money to clients.

These acts, whether the trial court determines they were tortious or not, were acts that required Mitchell to make contacts with Texas. Therefore, these acts support the trial court's exercise of specific personal jurisdiction over Mitchell.

### 1.2. Freese & Goss's causes of action relate to Mitchell's purposeful contacts with Texas.

A trial court may exercise specific personal jurisdiction where the defendant's contacts with the forum state are substantially related or connected to the plaintiff's claims. *See Moki Mac*, 221 S.W.3d at 585. The court looks to the connection between the alleged minimum contacts and the operative facts that will underlie the pending suit. *See id.*

Here, the alleged minimum contacts include Mitchell's formation of a joint venture with Freese & Goss, a Texas law firm;

his involvement in the furtherance of that joint venture, which was performed largely in Texas and which included Mitchell's efforts to re-sign clients—including Texas residents—for representation in the joint-venture settlement; and Mitchell's efforts to contact and recruit some of these joint-venture clients—including Texas residents—to bring lawsuits against Freese & Goss and others. *See* Factual & Procedural Background.

Mitchell's minimum contacts relate to the operative facts of this suit because, in this suit, Freese & Goss (1) alleges Mitchell, through his conduct, breached the fiduciary duties he owed to the joint venture and to his joint-venture partner, Freese & Goss; and (2) seeks a declaratory judgment dissolving the joint venture and thereby ending the parties' relationship with Mitchell, as it pertains to the joint-venture clients. CR 18–21.

Because Mitchell's contacts with Texas include his involvement in the Texas-based joint venture and his representation of Texas-resident clients, this suit seeking to dissolve that joint venture—and to recover for Mitchell's breach-of-duties arising from that joint venture—is "substantially connected" to Mitchell's contacts with Texas. *See Moki Mac*, 221 S.W.3d at 585.

In his brief, Mitchell does not assert a lack of substantial connection between the alleged minimum contacts and the operative facts of this suit. Instead, he simply asserts a lack of

minimum contacts with Texas. He contends, for example: "the claims against Mr. Mitchell have nothing to do with any act by him in Texas." Appellant's Br. 33. Or, similarly, he contends: "all [allegations] necessarily relate to conduct by Mr. Mitchell in Mississippi." *Id.* at 32. This theme continues throughout this portion of Mitchell's brief. *See id.* at 33–36. But these assertions are about where Mitchell's "contacts" occurred—not about whether the alleged minimum contacts are substantially connected to the operative facts of the suit.

Thus, Mitchell presents no argument or authority to challenge the trial court's implicit conclusion that Mitchell's contacts with Texas are related to the operative facts underlying this suit.

## 2. The trial court's exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

In addition to relying on "minimum contacts," to satisfy due process the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113 (1987); *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002). Determining this issue involves the evaluation of several factors, including: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the

plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in furthering substantive social policies. *Asahi Metal,* 480 U.S. at 113.

"In this inquiry, it is incumbent upon the defendant to present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex. 1991) (quoting *Burger King,* 471 U.S. at 477). When a nonresident has established minimum contacts with the forum state, it will be only a rare case when the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice. *Guardian Royal,* 815 S.W.2d at 231.

Mitchell has failed to present a compelling case that jurisdiction is unreasonable. He has presented no evidence, for example, that this suit creates an undue burden. The "mere fact that [he is] not physically located in Texas is not persuasive." *Tempest Broad. Corp. v. Imlay,* 150 S.W.3d 861, 877 (Tex. App.— Houston [14th Dist.] 2004, no pet.); *see also Ring Power Sys. v. Int'l de Comercio Y Consultoria,* 39 S.W.3d 350, 353–354 (Tex. App.— Houston [14th Dist.] 2001, no pet.) (noting that "distance alone is not ordinarily sufficient to defeat jurisdiction").

As to the second factor, Texas has a strong interest in holding out-of-state defendants responsible for torts committed against Texas residents. *See Wright*, 137 S.W.3d at 254. This case involves a tort committed against a Texas law firm (Freese & Goss) involving other Texas residents (joint-venture clients in the Texas-based settlement). Thus, Texas has a strong interest in holding Mitchell responsible for his tortious conduct. Moreover, Texas has an interest in ensuring and overseeing the proper wind-down of the parties' Texas-based joint venture.

As to the third and fourth factors, Freese & Goss have a strong interest in resolving this matter expeditiously. Freese & Goss is located in Dallas; the documents pertaining to the joint venture are located in Dallas; and neither the Fees Lawsuit nor the Client Lawsuits in Mississippi (see Factual & Procedural Background) involves the issues presented in this lawsuit. Thus, the interests of convenience and efficiency favor the resolution of this dispute in the Dallas trial court.

Finally, as a matter of substantive social policy, it only makes sense and is fair that a dispute (1) arising from a joint venture that was being performed mostly in Texas, by and at the office of a Texas law firm, and (2) involving tortious conduct by an out-of-state partner in that Texas-based joint venture, who purposefully

contacted at least 30 Texas residents, may be litigated and resolved in a Texas trial court.

## CONCLUSION & PRAYER

For the reasons presented, Appellees respectfully ask the Court to affirm the trial court's exercise of personal jurisdiction over Appellant Don Mitchell.

Respectfully submitted,

By:   /s/ *Jason P. Steed*

Jeffrey Tillotson, SBN 20039200
LYNN TILLOTSON PINKER & COX
2100 Ross Avenue, Ste. 2700
Dallas, TX 75201
Phone: 214.981.3800
Fax: 214.981.3839
jtillotson@lynnllp.com

Mikel J. Bowers, SBN 02734550
Jason P. Steed, SBN 24070671
BELL NUNNALLY & MARTIN LLP
3232 McKinney Avenue, Ste. 1400
Dallas, Texas 75204-2429
Phone: 214.740.1400
Fax: 214.740.1499
mbowers@bellnunnally.com
jsteed@bellnunnally.com

COUNSEL FOR APPELLEES

31

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing has been served on counsel for Appellant Don A. Mitchell through the Court's electronic filing system on November 4, 2015, in accordance with Texas Rule of Appellate Procedure 9.5.

/s/   *Jason P. Steed*
Jason P. Steed

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the relevant sections of this document contain 5,655 words, and the document complies in all respects with Texas Rule of Appellate Procedure 9.4.

/s/   *Jason P. Steed*
Jason P. Steed

2384429_1.docx / 9629.11